[Civ. No. 7028. Fourth Dist. Feb. 28, 1963.]

THE PEOPLE ex rel. DEPARTMENT OF PUBLIC WORKS, Plaintiff and Appellant, v. FELICE LIPARI et al., Defendants and Respondents.

486

George G. Hadley, Charles E. Spencer, Jr., Ray M. Steele and Robert E. Reed for Plaintiff and Appellant.

Best, Best & Krieger, Enos C. Reid, Arthur L. Littleworth and Eugene H. Bramhall for Defendants and Respondents.

MONROE, J. pro tem.*—This is a proceeding in eminent domain whereby the People of the state, acting by and through the Department of Public Works, condemned real property in Riverside County for freeway purposes. The action involved many parcels of property owned by various owners. Property owned by the defendants and respondents, Felice and Laura Lipari, was designated in the complaint as parcels 37 and 37A through 37H. These parcels constitute the right-of-way for the freeway, the smaller parcels taken for a temporary right-of-way, parcels to secure earth for necessary filling, and parcels for the construction of an overpass for Buchanan Street, a roadway through the property. The overpass was constructed in order that Buchanan Street could cross the freeway without interfering with the traffic thereon.

The issues relative to the Lipari property were separately tried and a jury determined the amount of the award. A judgment of condemnation was entered and the People moved for a new trial, which motion was denied. This appeal followed.

The respondents were the owners of a ranch property consisting of approximately 454 acres lying between Riverside and Corona. The property is irregular in shape and it varies from relatively smooth territory to portions that are rocky and rough. Along the southerly area of the ranch was the highway known as Magnolia Avenue. There were also railroad tracks of the Santa Fe Railroad Company. The land adjoining Magnolia and to the north is the smooth and level portion of the ranch and it is with this area that this appeal is concerned. The freeway that has been constructed and for which the right-of-way was condemned runs substantially parallel with Magnolia and some 600 feet to the north thereof. As a result, the highway divides the comparatively smooth portion of the ranch into areas south of the freeway and adjoining Magnolia Avenue and the areas to the north of the freeway. The ranch property was within the service area of a domestic water company and gas and electricity were available. Sewer service was not yet available. A portion of the area to the south of the freeway faced upon the unimproved road known as Sampson, which entered Magnolia Avenue. The line of the Pacific Electric Railway was in the middle of Magnolia Avenue.

*Assigned by Chairman of Judicial Council.

The jury returned a verdict for $82,173 for the value of the parcels of property taken and for $59,775 severance damages. Judgment was entered accordingly and from this judgment this appeal is taken. No question is raised as to the propriety of the amount awarded as the value of the parcels taken. It appears that the jury fixed a value of something in the neighborhood of between $3,000 and $3,500 per acre, which amount is not questioned on this appeal. The questions involved have to do solely with the matter of severance damages.

 The appellant presents first the claim that the court improperly struck from the record evidence of the plaintiff's evaluation witnesses as to special benefits. Two witnesses, Mr. Jeter and Mr. Cox, testified that the value of the area lying south of the freeway was increased by reason of the right to view the property from the freeway. Mr. Jeter gave it as his opinion that this right to view was a special benefit to the property in the amount of $12,500 and stated further that the erection of a fence along the boundary of the freeway was also a special benefit in the amount of $1,250. Mr. Cox gave as his opinion that the right to view was a special benefit to the property to the south of the freeway in the amount of $10,300.

Upon motion of the defendants the evidence of these witnesses with reference to the alleged special benefit consisting of the right to view was stricken and the jury instructed to disregard it. The People urge this ruling as error.

The contention of the People is based largely on the decision of *People* v. *Ricciardi*, 23 Cal.2d 390 [144 P.2d 799], and the authorities therein cited. It is there held in substance that the owner of real property abutting a public highway has an easement of reasonable view of his property from the highway and that the impairment or destruction of that view is the destruction of a valuable property right. The right of view referred to may be described as the right to maintain a view whereby travellers upon the highway can see the abutting property and be thereby induced to enter upon the property and do business with the owner. The reasoning of the appellant in this regard is summed up in the following statement in appellant's brief:

"It would be a most unjust anomaly of the law which would permit a recovery of damages for impairment of a property right such as an easement of view, but would deny

that the *creation* of the same property right is a special benefit.''

Appellant's contentions in this regard are based upon the erroneous premise that by constructing the freeway the People have ''created'' a right and easement. This is not correct. ▮ The rights of the owner of real property abutting the highway to the use of that highway and to the access thereto and to the view therefrom are rights that are inherent in the title to the property itself. They are a part and parcel of that title and they attach to any highway which abuts or may abut the property. In *Bacich* v. *Board of Control,* 23 Cal.2d 343, 349 [144 P.2d 818], the court said:

''It has long been recognized in this state and elsewhere that an owner of property abutting upon a public street has a property right in the nature of an easement in the street which is appurtenant to his abutting property and which is his private right, as distinguished from his right as a member of the public. That right has been described as an easement of ingress and egress to and from his property or, generally, the right of access over the street to and from his property, and compensation must be given for an impairment thereof. We are not now inclined to question or disturb that rule.''

In *People* v. *Ricciardi, supra,* at p. 397, the court stated: ''The courts of this state, from time immemorial and in cases too numerous to mention, have declared and enforced the abutting property owner's right to a free and convenient use of and access to the highway on which his property abuts. [Citations.] It was declared in the case of *Eachus* v. *Los Angeles etc. Ry. Co.,* 103 Cal. 614 [37 P. 570, 42 Am.St.Rep. 149], at p. 617, that this right of ingress and egress attaches to the lot and is a right of property as fully as is the lot itself and any act by which that easement is destroyed or substantially impaired for the benefit of the public, is a damage to the lot itself, within the meaning of the constitutional provision under which the owner is entitled to compensation.

''It is also the settled law that 'An abutting owner has two kinds of rights in a highway, a public right which he enjoys in common with all other citizens, and certain private rights which arise from his ownership of property contiguous to the highway, and which are not common to the public generally; . . . An abutting landowner on a public highway has a special right of easement and user in the public road for access purposes, and this is a property right which cannot be dam-

aged or taken away from him without due compensation. [Citing cases.]' ''

These quotations are supported by a large number of California decisions.

" 'The owner of a lot abutting upon a public street has by reason of such ownership a special easement in such street for the purpose of ingress and egress which is property as fully as the lot itself. [Citation.]' '' (*Lane* v. *San Diego Elec. Ry. Co.*, 208 Cal. 29, 33 [280 P. 109].)

''The property which an abutting owner has in the street in front of his land is the right of access and of light and air, and for an infringement of these rights he is entitled to compensation. This right is peculiar and individual to the abutting owner, differing from the right of passing to and fro upon the street, which he enjoys in common with the public, and any infringement thereof gives him a right of action. (Dillon on Municipal Corporations, sec. 712.) In *Eachus* v. *Los Angeles etc. Ry. Co.*, 103 Cal. 614 [37 P. 750, 42 Am.St. Rep. 149], the right which the abutting owner has to the use of the street fronting upon his lot is defined to be an easement therein for the purposes of ingress and egress, which attaches to the lot, and in which he has a right of property as fully as that which he has in the lot itself, and that any act of the municipality by which that easement is destroyed or substantially impaired for the benefit of the public is a damage to the lot itself within the meaning of the constitutional provision, for which he is entitled to compensation.'' (*Brown* v. *Board of Supervisors*, 124 Cal. 274, 280 [57 P. 82].) See also *Goycoolea* v. *City of Los Angeles*, 207 Cal.App.2d 729 [24 Cal.Rptr. 719].

It is true that where severance damages are sought the court may consider the increased value, if any, resulting from the construction of the improvement. In other words, in determining the damage to the property not taken there is to be considered the value of that property before the taking and the value of the property thereafter. In determining that difference, there may be considered its value as affected by the construction of the improvement. (*People* v. *Ricciardi, supra,* at p. 401.) This, however, is a different matter altogether from the contention now made on behalf of the People to the effect that there was created an easement of right which did not theretofore exist. It is the rule that where a witness testifies to value and bases his statement

entirely upon incompetent or improper elements or conclusions, that testimony may properly be stricken. (*People v. Dunn,* 46 Cal.2d 639 [297 P.2d 964] ; *City of Stockton* v. *Ellingwood,* 96 Cal.App. 708 [275 P. 228] ; *Goycoolea* v. *City of Los Angeles, supra.*)

An even more persuasive reason for striking the testimony of these witnesses with respect to alleged special benefits is apparent from a consideration of the facts involved. There was constructed a freeway which goes all the way through the land owned by the respondents. This freeway is bounded on both sides by a chain link fence 6 feet in height, designed and intended to prevent any access to the property abutting the freeway. As a part of the proceeding the right of access to the freeway is condemned. The theory of this easement to view the premises from the highway is that places of business may be established along the highway and parties travelling along the highway may thus be attracted to the places of business and become customers. Thereupon they may drive into the place of business and after patronizing it, reenter the highway. It is the very essence of the idea of a freeway to prevent just that sort of thing. As is pointed out in *People* v. *Ricciardi, supra,* the rule is well established that it is the duty of the court to determine whether the taking and construction has resulted in substantial damage and if so, the amount thereof is to be determined by the jury. (*People* v. *Ricciardi, supra,* p. 402.)

It is obvious that the trial court determined that the testimony of these witnesses with regard to the alleged special benefits established no substantial benefit. The trial court was therefore justified in striking the testimony with regard thereto and directing the jury to disregard it.

The appellant predicates error on the refusal of requested instructions relative to alleged special benefits. The only testimony relative to special benefits having been stricken, the giving of instructions with reference thereto became unnecessary. All that remained was to advise the jury to disregard the testimony so stricken.

It is further contended that the trial court erred in refusing to strike the testimony of the defendants' witnesses with reference to value. The witnesses were Mr. Babcock and Mr. Jackson, who both qualified as appraisers. These witnesses testified in substance that they considered the entire area of the ranch which was comparatively level as being suitable for development for business purposes, which they

stated was its highest and best use. They testified, however, that when the freeway was constructed that portion of the area lying south of the freeway was not damaged and that its highest and best use was still industrial. It was their opinion, however, that as a result of the taking and the construction the highest and best use of the property to the north of the freeway was no longer industrial but was for residential purposes. Although they stated that the property could still be used for certain industrial purposes its value therefor would be less than that for residential purposes. These witnesses gave as their opinion that there was a severance damage considerably in excess of that which was ultimately allowed. This difference between the opinion of the witnesses and the amount of the award is explainable in part at least by the fact that the jury determined a value per acre somewhat less than the value used by the witnesses in their calculations.

Much of the appellant's brief is devoted to a discussion of the testimony of these witnesses. It is pointed out that in connection with giving his opinion, Mr. Babcock testified, among other things, that the access to the property to the north was impaired, that the Buchanan Street bridge and overpass was narrow and that there were grades to the overpass; that by reason of the existence of the freeway it was no longer possible to connect railroad spurs to serve the property for industrial purposes; that the areas to the north of the highway would be served by one road, Buchanan Street, and that there would be some increased drainage costs by reason of the freeway construction. It is pointed out that the witness Jackson gave as reasons for his conclusions, among other things, that it would no longer be possible to cross over the freeway with multiple street patterns nor with rail trackage; that mounds of dirt were serving as approach ramps to the bridge; that the access to the area was limited; that it was not adaptable to a unitized street pattern; that there was an impairment of access by reason of the northerly bridge approach; that residential lots abut the freeway itself and that they would have a drainage problem. Both of the witnesses testified that as to the drainage problem they had relied upon statements made by Mr. Webb, an engineer whose testimony will be later considered.

Appellant's brief with regard to the testimony of these witnesses is, in the main, an argument as to the weight to be given to their testimony. It is true that some of the reasons

given by the witnesses did not, standing alone, support a conclusion that there was allowable damage. But that is not correct as to all of them. It is to be noted that neither witness undertook to assign any particular damage by reason of any of the items stated. The substance of their testimony was that by reason of all these things which they had observed and considered they had concluded that the highest and best use of the property to the north of the freeway was no longer an industrial use but was the lesser valued use, for residential purposes. ■ It was their conclusion that by reason of the change in the highest and best use the property had become less valuable. This is in accordance with the rule, heretofore referred to, that severance damage is to be determined by the difference between the value before and after taking. There can be little question but that the availability of railroad side tracks affects the value of property for industrial purposes. In the case of *Goycoolea* v. *City of Los Angeles, supra,* one of the reasons for damage was the narrowing of the street. In the case at bar, the respondents claimed that by reason of the narrowing of Buchanan Street as it crossed the overpass, the suitability of the roadway for the passage of heavy equipment is affected, which would affect the desirability of the property for business purposes.

■ Although, as heretofore stated, where a witness has based his opinion of value entirely upon improper considerations, his opinion as to value should be stricken; where, however, such testimony embraces evidence which is proper as well as that which is not, a motion to strike may properly be denied and the matter left to the jury to determine the weight to be given to the testimony. The question is addressed to the discretion of the trial court. (*Rose* v. *State of California,* 19 Cal.2d 713 [123 P.2d 505]; *Pacific Gas & Elec.Co.* v. *Hufford,* 49 Cal.2d 545 [319 P.2d 1033]; 19 Cal. Jur.2d 99; *Southern Pac. R.R.Co.* v. *San Francisco Sav.Union,* 146 Cal. 290 [79 P. 961, 106 Am.St.Rep. 36, 2 Ann.Cas. 962, 70 L.R.A. 221]; *Wells Fargo Bank* v. *Dowd,* 139 Cal.App.2d 561 [294 P.2d 159].)

Inasmuch as these witnesses were qualified by experience and as the greater portion of their testimony was proper, the mere fact that some of the items brought out on examination were not correct elements of damage would not require that their testimony be stricken and the trial court properly left the matter of the weight to be given to the evidence to the jury.

██ Appellant also complains of the testimony of the witness Webb and the court's refusal to strike same from the record. Mr. Webb was an engineer called by the defendants. He testified with reference to the drainage of the area north of the highway. He disclaimed any knowledge as to values of property and gave no testimony with reference thereto. The substance of his testimony was to the effect that he had made a survey and study of the area and that he was of the opinion that by reason of the construction and existence of the freeway there would be something of an added drainage problem. He stated that after the area was developed for residential purposes there would be times when the provisions made by the People for drainage when the freeway was constructed would be inadequate. He did not undertake to say the extent of this inadequacy nor did he indicate that it was a matter that would greatly affect the utility of the area. He stated no more than that there would be some ponding in case of occasional severe storms and something of a problem which would have to be considered in the future. The other witnesses, Babcock and Jackson, testified that they considered the information given by Mr. Webb as an element in determining the character and suitability of the property. No witness attempted to assign any particular amount of damage to this testimony.

Considering the testimony as it appears in the record it is evident that the testimony of Mr. Webb had little, if any, effect on the award of the jury. It is of course true that if an area is ultimately used for residential purposes and is improved accordingly, there will be a decided increase in the runoff of storm water. If there is some problem with reference to the efficiency of the drainage it will have at least some effect on the desirability of the property and upon its highest and best use. Although this evidence was material, it did not purport to affect directly the monetary value. In this connection it is to be noted that Mr. Babcock gave as his opinion that severance damages amounted to $108,300 and that Mr. Jackson gave as his opinion that it amounted to $123,340, while the jury allowed $59,775. Considering the fact that the amount of the award for the property taken was comparatively close to the figure given by the People's appraisers, there is every indication that the jury carefully weighed the testimony. We find no error or abuse of discretion in refusing to strike the testimony.

██ Before it may be held that there was any reversible

error in striking or refusing to strike the testimony of any witness in a condemnation case it must appear in accordance with article VI, section 4½ of the Constitution of California that the error was of sufficient gravity as to create a miscarriage of justice. See *People* ex rel. *Dept. of Public Works* v. *Alexander,* 212 Cal.App.2d 84, 101 [27 Cal.Rptr. 720], and cases there cited.

The only other error assigned by appellant is the refusal to instruct the jury to disregard all testimony relative to matters of drainage. Having found that there was no reversible error in the refusal to strike the testimony of Mr. Webb, it follows that we find no error in this regard.

The judgment is affirmed.

Griffin, P. J., and Coughlin, J., concurred.

A petition for a rehearing was denied March 22, 1963, and appellant's petition for a hearing by the Supreme Court was denied April 24, 1963.