TAMURA, J.
 

 Plaintiff brought this action in eminent domain to acquire (1) a perpetual easement for the installation and maintenance of a storm drain conduit; (2) fee title to a small parcel for an appurtenant intake facility; and (3) a temporary construction easement along the perpetual easement. Following a jury trial on values, an interlocutory judgment was entered for a net award to the owner of $28,472. Plaintiff appeals from the judgment.
 

 Plaintiff has filed an extensive brief setting forth a number of alleged errors occurring during trial. Basically most of plaintiff’s contentions are simply variations of its central argument that defendants' valuation witnesses used improper methods and considered speculative and conjectural uses in arriving at their opinions of fair market value and severance damage.
 

 The larger parcel consists of 10.44 acres located near the southwest corner of Barton Road and Michigan Avenue in unincorporated territory in San Bernardino County. A 125' x 125' parcel separates the property from the intersection. The property is bordered on the north by Barton Road, on the west by an off-ramp right-of-way from the Riverside freeway, on the south by property zoned for residential use, and on the east by Michigan Avenue. The parcel is generally trapezoidal, the Barton Road frontage being 260 feet extending eastward from the freeway off-ramp and the southerly boundary being 1,245 feet extending from the freeway right of way easterly to Michigan Avenue.
 

 The strip of land condemned for the perpetual easement
 
 *890
 
 (.416 acres) extends along and across the westerly portion of the property generally parallel to the freeway right-of-way. At Barton Road and for a distance of 176.8 feet southeasterly therefrom, it is contiguous to the off-ramp but thereafter, as it extends southwesterly, because of the irregularity of the western boundary of the property, the strip cuts across it leaving 1.70 acres between the easement and the freeway right of way. For most of its length the strip is 20 feet wide, but as it approaches Barton Road it flares out to a width of approximately 40 feet.
 

 The easement vests in the plaintiff-flood control district the perpetual right “to construct, reconstruct, inspect, operate, maintain, and repair flood control drainage and water conservation works and appurtenant structures,” “to deposit tools, implements and other materials therein and thereon and to take therefrom and/or place thereon earth, rock, sand, and gravel for the purpose of construction, maintenance, and repair, ’
 
 ’
 
 to enter from time to time for purposes of inspection, “the right to prohibit the construction or placement of any structure upon, over or across said land unless prior written approval for said construction or placement of said structure is given by the Chief Engineer of said District.' ’
 

 The fee parcel (.057 acres) for the intake facility is contiguous to and midway along the perpetual easement.
 

 In March 1964 defendant Glenn-Hagen Enterprises (GlennHagen), a partnership, entered into escrow for the purchase of the property. The instructions specified September 26,1964, as the closing date.
 

 The present action was filed on October 14, 1964. GlennHagen and the record owners answered alleging that the property was subject to a purchase and sale agreement to GlennHagen. In their joint pretrial statements the parties agreed that a special hearing would be requested at least one month before trial to determine the interest of Glenn-Hagen in the event that the sale had not been consummated by June 10, 1965. The only matters reserved for trial were fair market value, severance damages and special benefits.
 

 Between January and June 1965, pursuant to an order of immediate possession, plaintiff constructed a concrete storm drain 48-54 inches in. diameter and 5-10 feet below ground level .along the entire length of the perpetual easement.
 

 At the commencement of trial on September 14,' 1965, neither party having theretofore requested a hearing on the
 
 *891
 
 interest of Glenn-Hagen and it appearing that escrow had closed in July 1965, the court determined that Glenn-Hagen was the then owner and that the issue had become moot.
 

 The evidence on values, severance damage and benefits may be summarized as follows;
 

 The property ivas unimproved except for an old dwelling and a well. When Glenn-Hagen entered into escrow, the Barton Road frontage to a depth of approximately 152 feet was zoned C-l and the remainder R-4. In April 1964 Glenn-Hagen executed a lease with Texaco for the construction and operation of a service station on a site fronting Barton Road commencing at a point 25 feet east of the freeway off-ramp and extending eastward along Barton Road for 150 feet and to a depth of 150 feet. Some time between May and October 1964 the site covered by the lease was rezoned C-2 and the rear portion from R-4 to C-l. Additionally, in compliance with the requirement of the county for the rezoning, defendants apparently dedicated or offered to dedicate 17 feet along Barton Road to the county. In the joint pretrial statement the parties stipulated that the highest and best use of the property was commercial.
 

 There was a wide disparity in the opinions of the valuation witnesses for the respective parties on market value, severance damage and benefits. A summary of their testimony follows:
 

 For the defendant, Mr. Hagen (partner in Glenn-Hagen) testified that the Texaco lease as originally negotiated left 110 feet of Barton Road frontage available for other uses. In his opinion the highest and best use of the frontage to a depth of 135 feet (after the dedication of 17 feet) was for a gas station on the 150 feet adjacent to the freeway off-ramp and for a restaurant on the remaining 110 feet, and the highest and best use of the rear portion was for a shopping center with a major market, a trailer park, or “various other commercial uses.” In his opinion the fair market value of the property before the take Avas $225,000.
 

 On the issue of severance damage it was his opinion that by reason of the terms and conditions of the perpetual easement, the use of 40 feet of the Barton Road frontage impressed with the easement was lost so that after providing for a gas station site only 90 feet of frontage was left for other uses. In his opinion a restaurant of the type previously contemplated would not be feasible on the remaining 90 feet and that
 
 *892
 
 its highest and best use would be limited to a “A & W Boot Beer ’ ’ stand, drive-in food stand, or perhaps an office building, which would produce only one-half the revenue which could be derived from a restaurant. It was thus his opinion that the frontage was devalued by $25,000. As to the rear portion it was his opinion that the 1.7 acres lying west of the perpetual easement which he valued at $18,000 would be isolated from the remainder and thereby rendered valueless. His opinion of the total severance damage was $43,000 and special benefits $3,000.
 

 Mr. Beid (real estate appraiser) called by defendant, testified that the property had three different characteristics and highest and best uses. It was his opinion that the highest and best use of the Barton Boad frontage was, by reason of its distinctive location adjacent to a freeway off-ramp, for a gas station and allied use such as a restaurant and of the rear portion for a shopping center, motel, or as a trailer park for a transitional use. He considered various sales in the area, both of gas station sites and acreages and arrived at a fair market value of $180,000 for the property in the before condition. In his opinion the Barton Boad frontage had a higher valuation than the rear portion and from an analysis of sales data he testified that a prospective purchaser of the whole would consider the frontage to have a square foot value of $2.13 for the 150 feet adjacent to the off-ramp ($58,500) and $2.00 a square foot for the balance of the frontage ($30,000). In valuing the rear portion at $92,000, he testified that the 5.95 acres adjacent to Michigan Avenue was worth $11,000 per acre and the remaining 3.16 acres, by reason of the possibility of flooding from freeway run off, $8,700 per acre, giving an average value of $10,000 per acre.
 

 As to severance damage, he testified that although in the after condition the frontage would be as well adapted for a gas station as in the before condition, the normal site requirement for a service station being 150 feet by 150 feet, there would be less frontage available for an allied use. Hence, in his opinion, the frontage in the after condition would have a smaller average square foot value to a prospective purchaser. As to the rear portion, it was his opinion that 3.16 acres which he valued at $8,700 per acre in the before condition would be devalued 50 percent. He estimated total severance damage at $25,945 and special benefits at $3,000.
 

 Mr. Beid denied that he appraised four separate parcels
 
 *893
 
 and repeatedly testified that he valued the property as a whole, considering only what a knowing buyer having in mind the different highest and best uses to which the property ivas adaptable would consider.
 

 Plaintiff’s witness, Mr. Grigsby (real estate appraiser) testified that the highest and best use of the Barton Road frontage was, as contemplated by defendant, for a gas station and a restaurant or some related use. In his opinion it had a higher valuation than the remainder of the property. Based upon his investigation and analysis of comparable sales, including service station sites and acreages, he testified that the frontage had a value of $150 per front foot and the rear portion an average value of $10,000 per acre, all as a part of the whole. His opinion of the fair market value of the property was $133,200.
 

 On the issue of severance, it was his opinion that the surface of the strip subject to the perpetual easement could be effectively used as a part of a service station site so that there was no devaluation of the frontage. He found a minimal damage of $345 to the rear portion and special benefits of $5.325.
 

 Mr. Morrison (real estate appraiser), the second valuation witness for plaintiff, testified that the Barton Road frontage was “ripe” for immediate commercial development by which, he explained on cross-examination, he meant for a gas station and related use such as a restaurant, drive-in food stand, cleaners, liquor store, or other like use. It was his opinion that the fair market value of the whole parcel was $145,000, but that the frontage had a higher unit value as a part of the whole than the rear portion. He testified that the average unit value of the property was thus $14,023.21 per acre but since the Barton Road frontage was more valuable, he placed the unit value of the rear portion at $8,000 per acre. The sale which he considered to be most significant was the sale of subject property to Glenn-Hagen for $125,000.
 

 On the issue of severance, he testified that the use of the Barton Road frontage for its highest and best use would be unaffected by the easement but that the 1.75 acres in the rear which was severed by the easement would have only limited utility, such as for storage, signs, landscaping, or a playground for a trailer park and would be devalued by 50 percent. He fixed severance damage at $7,150, including cost of fencing, and special benefits at $9,250.
 

 
 *894
 
 A tabulation of the opinions of the valuation witnesses and the jury verdict is as follows:
 

 Perpetual Basement
 

 .057 aere in fee
 

 Temporary Basement
 

 Severanee Damages
 

 Special Benefits
 

 Net to Owner
 

 For Defendant
 

 Hagen, H. 0.
 

 $15,000
 

 $ 650
 

 $ 292
 

 $43,000
 

 $3,000
 

 $55,942
 

 Reid, J. J.
 

 10,400
 

 500
 

 450
 

 25,945
 

 3,000
 

 34,295
 

 For Plaintiffs
 

 Morrison, D. D.
 

 4,650
 

 450
 

 545
 

 7,150
 

 9,250
 

 5,645
 

 Grigsby, E. G.
 

 6,010
 

 570
 

 367
 

 345
 

 5,325
 

 6,947
 

 Jury Verdict :
 

 11,225
 

 500
 

 292
 

 19,500
 

 3,000
 

 28,472
 

 Preliminarily plaintiff contends that the court erred in overruling his objection to Mr. Hagen’s valuation testimony because it was never established that he was an owner on the date of value. The contention is without merit.
 

 The record reveals that the court determined that Mr. Hagen was qualified to testify not only because it appeared that he had a compensable interest on the date of value, but that by reason of his extensive experience in real estate development in the San Bernardino area, particularly in the development of service stations and shopping centers, his ownership of properties in the vicinity of subject property and his long time residence in San Bernardino, he had the background and experience to judge property values in the area. A witness who through knowledge and experience possesses the means to form an intelligent judgment as to the value of land beyond that possessed by persons generally is competent to give an opinion on fair market value even though he is not a real estate appraiser or broker.
 
 (Pacific Gas & Elec. Co.
 
 v.
 
 Hufford,
 
 49 Cal.2d 545, 563 [319 P.2d 1033];
 
 People
 
 ex rel.
 
 Dept. of Public Works
 
 v.
 
 Alexander,
 
 212 Cal.App.2d 84, 91 [27 Cal.Rptr. 720];
 
 Los Angeles City High School Dist.
 
 v.
 
 Rodriguez,
 
 135 Cal.App.2d 760, 768 [287 P.2d 371]; see
 
 Redwood City etc. School Dist.
 
 v.
 
 Gregoire,
 
 128 Cal.App.2d 766, 771 [276 P.2d 78].) A witness so qualified, even though not an expert appraiser, is entitled to state the reasons for his opinions.
 
 (Long Beach City High School Dist.
 
 
 *895
 
 v.
 
 Stewart,
 
 30 Cal.2d 763, 773 [185 P.2d 585, 173 A.L.R. 249];
 
 People
 
 ex rel.
 
 Dept. of Public Works
 
 v.
 
 Alexander, supra,
 
 at p. 91.) The qualification and competency of one offered as a valuation witness is a matter to be determined by the trial court and its ruling will not be disturbed on appeal unless a manifest abuse of discretion is shown.
 
 (Pacific Gas & Elec. Co.
 
 v.
 
 Hufford, supra,
 
 49 Cal.2d 545, 563;
 
 People
 
 v.
 
 Hayward Bldg. Materials Co.,
 
 213 Cal.App.2d 457, 471 [28 Cal.Rptr. 782].) In the present ease there was no abuse of discretion in the court’s ruling that Mr. Hagen’s background and experience qualified him to testify as a valuation witness.
 

 We turn to plaintiff’s principal contention, namely, that the testimony of defendant’s valuation witnesses should have been stricken because their opinions of value and severance damage were based upon improper considerations in that (1) they appraised the property as though it had been divided in accordance with the owner’s projected plan of development, and (2) they valued the whole by separately appraising the component parts assigning to each part as its highest and best use, the use contemplated by the owner, and treated the total as the market value of the whole.
 

 Evidence of the owner’s plan of development is not admissible where its purpose is to show loss of profit or enhanced damages which would be suffered by being prevented from carrying out a particular scheme of improvement.
 
 (People
 
 v.
 
 La Macchia,
 
 41 Cal.2d 738, 751 [264 P.2d 15];
 
 People
 
 v.
 
 Chevalier,
 
 52 Cal.2d 299, 309 [340 P.2d 598] ;
 
 People
 
 ex rel.
 
 Dept. of Public Works
 
 v.
 
 Alexander, supra,
 
 212 Cal.App.2d 84, 93;
 
 Laguna-Salada etc. Dist.
 
 v.
 
 Pacific Dev. Co.,
 
 119 Cal.App.2d 470, 476 [259 P.2d 498];
 
 City of Los Angeles
 
 v.
 
 Kerckhoff-Guzner Co.,
 
 15 Cal.App. 676, 677-678 [115 P. 654].) Under certain restricted circumstances, however, the owner’s projected plan is admissible where the feasibility of the proposed use is a relevant consideration in determining market value.
 
 (City of Daly City
 
 v.
 
 Smith,
 
 110 Cal.App.2d 524, 532 [243 P.2d 46] ; see
 
 People
 
 v.
 
 Chevalier, supra,
 
 52 Cal.2d 299, 309;
 
 People
 
 v.
 
 La Macchia, supra,
 
 41 Cal.2d 738, 751, overruled on other grounds in
 
 County of Los Angeles
 
 v.
 
 Faus,
 
 48 Cal.2d 672, 679 [264 P.2d 15];
 
 People
 
 ex rel.
 
 Dept. Public Works
 
 v.
 
 Alexander, supra,
 
 212 Cal.App.2d 84, 93;
 
 Buena Park School Dist.
 
 v.
 
 Metrim Corp.,
 
 176 Cal.App.2d 255, 260 [1 Cal.Rptr. 250].) But evidence of value in terms of money
 
 *896
 
 which the land would bring for a specific use or under an owner’s projected plan of development is not admissible.
 
 (Long Beach City High School Dist.
 
 v.
 
 Stewart, supra,
 
 30 Cal.2d 763, 771;
 
 People
 
 v.
 
 La Macchia, supra,
 
 41 Cal.2d 738, 751;
 
 People
 
 ex rel.
 
 Dept. of Public Works
 
 v.
 
 Silveira,
 
 236 Cal.App.2d 604, 627 [46 Cal.Rptr. 260];
 
 People
 
 ex rel.
 
 State Park Com.
 
 v.
 
 Johnson,
 
 203 Cal.App.2d 712, 717 [22 Cal.Rptr. 149].) Thus the adaptability of part of a single parcel to a highest and best use differing from that to which other portions may be adaptable by reason of its distinctive character may be considered by a valuation witness on the theory that it is a factor which a knowing buyer would consider in determining the price he would pay for the whole.
 
 (Pacific Gas & Elec. Co.
 
 v.
 
 Hufford, supra,
 
 49 Cal.2d 545, 561.) The vice lies in separately appraising in terms of money different parts of a single undivided parcel and taking the total as the fair market value of the whole. (4 Nichols on Eminent Domain 171; see
 
 City of Los Angeles
 
 v.
 
 Hughes,
 
 202 Cal. 731, 735 [262 P. 737];
 
 People
 
 v.
 
 Olsen,
 
 109 Cal.App. 523, 533 [293 P. 645].)
 

 In the present case Mr. Hagen’s testimony relating to the Texaco lease, the layout he proposed for a restaurant on the balance of the Barton Road frontage and the contemplated use of the rear portion for a trailer park or shopping center was properly received to show the adaptability of the property to such uses. As to the Texaco lease, it may be inferred from the evidence that it was a fact on the date of value, and, hence, was relevant to a determination of fair market value. (See
 
 People
 
 v.
 
 Dunn,
 
 46 Cal.2d 639, 641 [297 P.2d 964] ; Evid. Code, § 817.) Contrary to plaintiff’s assertion, there was no attempt to show anticipated profits from the lease. Nor was there any evidence, as contended by plaintiff, that the proposed uses were speculative or conjectural. As a matter of fact appraisers on both sides testified that because of its distinctive location the highest and best use of the Barton Road frontage was for immediate development for a service station and related use, such as a restaurant. The uses were thus ones which an investor could properly consider. (See
 
 State of California
 
 v.
 
 Whitlow,
 
 243 Cal.App.2d 490, 500 [52 Cal.Rptr. 336].) They all also testified that the frontage had a higher value qualitatively than the rear portion. In proper circumstances, a unit value higher than the average unit value, may be assigned to a part of a single parcel.
 
 (People
 
 v.
 
 Loop,
 
 127 Cal.App.2d 786, 800-801 [274 P.2d 885].)
 

 
 *897
 
 In determining the fair market value of the subject property, however, it appears that Hr. Hagen valued in terms of money each separate area and treated the total as the market value of the whole.
 
 [1]
 
 On proper objection such testimony should have been excluded. Although the apparent impropriety of the method employed should have been immediately perceived, plaintiff interposed no objection to Mr. Hagen’s testimony other than that he was not qualified because he was not an owner, an objection which, as heretofore noted, was properly overruled. Plaintiff may not, therefore, now complain that the evidence was erroneously admitted.
 
 (Pacific Gas & Elec. Co.
 
 v. Hufford,
 
 supra,
 
 49 Cal.2d 545, 555;
 
 Redevelopment Agency
 
 v.
 
 Zwerman,
 
 240 Cal.App.2d 70, 73 [49 Cal.Rptr. 443].)
 

 After Mr. Hagen was cross-examined, plaintiff did make belated motions to strike.
 

 Its first motion was to strike all of Mr. Hagen’s testimony on market value, severance and special benefits on the ground that he was not an owner; that motion was for reasons heretofore stated properly denied.
 

 Plaintiff next moved to strike “that portion of his testimony pertaining to severance damage” on the ground that he based his opinion of damage to the frontage on speculative and conjectural uses and on his misconception of the nature of the easement. That motion was submitted and denied after both parties rested.
 

 A motion to strike must be directed with precision to the testimony sought to be stricken
 
 (People
 
 ex rel.
 
 Dept. of Public Works
 
 v.
 
 Alexander, supra,
 
 212 Cal.App.2d 84, 98;
 
 Buena Park School Dist.
 
 v.
 
 Metrim Corp., supra,
 
 176 Cal.App.2d 255, 262;
 
 County of Los Angeles
 
 v.
 
 Hoe,
 
 138 Cal.App.2d 74, 80 [291 P.2d 98]), particularly where a part only of the testimony is objectionable.
 
 (People
 
 v.
 
 Loop, supra,
 
 
 *898
 
 127 Cal.App.2d 786, 800-801.) Where it appears that the opinion of a valuation witness is based wholly or chiefly upon improper considerations or incompetent and inadmissible matters, his testimony may be stricken.
 
 (People
 
 v.
 
 Dunn, supra,
 
 46 Cal.2d 639, 641;
 
 San Diego Land etc. Co.
 
 v.
 
 Neale,
 
 88 Cal. 50, 63 [25 P. 977, 11 L.R.A. 604].) But where his opinion is based upon considerations which are proper as well as those which are not, the motion to strike may, in the sound exercise of the court’s discretion, be denied and the matter left to the jury to determine the weight to be given the testimony.
 
 (County of Santa Clara
 
 v.
 
 Ogata,
 
 240 Cal.App.2d 262-267 [49 Cal.Rptr. 397];
 
 City of Gilroy
 
 v.
 
 Filice,
 
 221 Cal.App.2d 259, 271 [34 Cal.Rptr. 368];
 
 People
 
 v.
 
 Lipari,
 
 213 Cal.App.2d 485, 493 [28 Cal.Rptr. 808]; see
 
 Rose
 
 v.
 
 State of California,
 
 19 Cal.2d 713, fn. 2 [123 P.2d 505].)
 

 Mr. Hagen testified extensively on the issue of severance damage. While there may be some support for plaintiff’s contention that he may have based his opinion, in part, on the effect the taking had in preventing the owner from pursuing its contemplated plan of development, his testimony indicated that he considered proper and relevant factors such as the feasibility of utilizing the surface of the easement for a service station, the normal site requirement for a restaurant, the effect of the loss of 40 feet of frontage on the uses to which the frontage was adaptable prior to the take and the limited uses to which it would be adaptable thereafter, and the effect of the easement on the use of the 1.7 acres in the rear which was severed from the remainder. Such factors as the size and shape of the remainder, loss of highway frontage, and impairment of the use of the property by showing the uses to which the property was adaptable prior to the taking and the limited uses to which the property may be devoted thereafter may properly be considered in determining severance damage.
 
 (People
 
 v.
 
 Loop, supra,
 
 127 Cal.App.2d 786, 799;
 
 (People
 
 v.
 
 Ricciardi,
 
 23 Cal.2d 390, 398 [144 P.2d 799] ; 4 Nichols on Eminent Domain, § 14.243, pp. 578-579.) Nor did the court err in permitting Mr. Hagen to testify that in his opinion the rights reserved to the owner under the easement were such that the surface could not be utilized as a part of a service station site. A qualified witness may express an opinion on the use which an owner can make of land impressed with an easement.
 
 (Pacific Gas & Elec. Co.
 
 v.
 
 Hufford, supra,
 
 49 Cal.2d 545, 563; see
 
 City of Gilroy
 
 v.
 
 Filice, supra,
 
 221 Cal.App.2d 259, 268.) In the pres
 
 *899
 
 ent case the evidence shows that Mr. Hagen was familiar with the nature of easements and the fact that they varied in terms and conditions. The weight to be given his testimony on the effect the easement would have on the use of the surface of the land by the owner was a matter for the jury.
 
 (People
 
 v.
 
 Loop, supra,
 
 127 Cal.App.2d 786, 800;
 
 City of Gilroy
 
 v.
 
 Filice, supra,
 
 221 Cal.App.2d 259, 268.)
 

 We conclude that the court did not abuse its discretion in denying plaintiff's motion to strike Mr. Hagen’s testimony on severance damage.
 

 The foregoing observations concerning plaintiff’s motion to strike Mr. Hagen’s testimony are applicable to plaintiff’s motion to strike Mr. Beid’s testimony. Plaintiff, after permitting him to testify at great length without objection on the grounds stated in its subsequent motion to strike, made a motion at the conclusion of his direct testimony “to strike the valuation testimony of Mr. Beid, including that testimony pertaining to damages in this ease” on grounds that the witness ignored the fact that on the date of value “the property was unimproved agricultural acreage,” that he divided the property into four separate parcels and applied “his theory of highest and best use to each separate parcel,” and that “he considered potential income, future profits, by implication. ...”
 

 Although there is some support in the record for plaintiff’s contention that Mr. Beid may have separately appraised the gas station site, the remainder of the Barton Boad frontage and the rear portion and took the total as being the value of the whole, he testified repeatedly that he valued the parcel as a whole and merely considered what a prospective purchaser would consider in determining how much he would pay for the property as a whole. In denying the motion to strike, the court observed that plaintiff permitted Mr. Beid to testify without objection on the grounds stated in the motion and that the court would grant plaintiff’s counsel wide latitude in cross examining him on the matters raised in the motion to strike. Plaintiff’s counsel did conduct a searching cross-examination in the course of which Mr. Beid testified in part as follows: “Bearing in mind, sir, I was appraising the value of the whole site, it was only that I did what I thought a knowing buyer would do as to the different uses that might be put to the site.
 

 
 *900
 
 “I did not appraise four different sites. I appraised one site.” If the foregoing testimony is given credence, he used the correct approach.
 
 (Pacific Gas
 
 §
 
 Elec. Co.
 
 v.
 
 Hufford, supra,
 
 49 Cal.2d 545, 561.)
 

 The other grounds of the motion to strike, namely, that Mr. Reid improperly considered his “theory” of highest and best use for separate parts of the property and considered prospective and conjectural uses, were properly rejected. [18] As heretofore indicated, a single parcel having several distinctive characteristics may be shown to be adapted to different highest and best uses. In the instant case all of the witnesses were in substantial agreement respecting the highest and best use to which each specific area of the property was adaptable. Mr. Reid’s testimony did not differ from the testimony of the other witnesses in this respect.
 

 We find no abuse of discretion in the court’s ruling denying plaintiff’s motion to strike and leaving to the jury the weight to be accorded Mr. Reid’s testimony.
 
 (People
 
 v.
 
 Lipari, supra,
 
 213 Cal.App.2d 485, 493.)
 

 Plaintiff complains that defendant’s valuation witnesses failed to observe the proper rules for determining severance damages in that they failed to testify to the value of the larger parcel in the after condition. The contention is without merit. Severance damage is determined by ascertaining the market value of the property not taken as a part of the whole in the before condition and by deducting therefrom the market value of such remainder after the take and the construction of the improvement in the manner proposed by plaintiff.
 
 (People
 
 v.
 
 Hayward Bldg. Materials Co.,
 
 213 Cal.App.2d 457, 464 [28 Cal.Rptr. 782] ;
 
 People
 
 v.
 
 Loop, supra,
 
 127 Cal.App.2d 786, 799.) But it is the rule in California that severance damages “may be shown by proving the market value of the remainder before and after the taking and leaving the computation of the difference to the jury, or by competent evidence of severance damages in a lump sum. ...”
 
 (People
 
 v.
 
 Ricciardi, supra,
 
 23 Cal.2d 390, 401;
 
 Pacific Gas & Elec. Co.
 
 v.
 
 Hufford, supra,
 
 49 Cal.2d 545, 555 ;
 
 People
 
 v.
 
 Hayward Bldg. Materials Co., supra,
 
 213 Cal.App.2d 457, 464-465.) It was thus permissible for defendant’s valuation witnesses to show, as they did, the loss or depreciation in the market value of the property after the take by testifying to severance damage in a lump sum. There was no impropriety in their so doing.
 
 (People
 
 v.
 
 Hayward Bldg. Materials Co.,
 
 
 *901
 

 supra; Pacific Gas & Elec, Co.
 
 v.
 
 Hufford, supra,
 
 at pp. 554-555.)
 

 Plaintiff complains that the court erroneously permitted Mr. Reid to testify to sales some 3 to 5 miles distant from subject property. The witness testified that he considered the sales because of their comparable location adjacent to a freeway off-ramp. The admissibility of testimony relating to comparable sales rests largely in the discretion of the trial court.
 
 (People
 
 ex rel.
 
 Dept. of Public Works
 
 v.
 
 Silveira, supra,
 
 236 Cal.App.2d 604, 623;
 
 County of Los Angeles
 
 v.
 
 Faus,
 
 48 Cal.2d 672, 676-679 [312 P.2d 680] ;
 
 Covina Union High School Dist.
 
 v.
 
 Jobe,
 
 174 Cal.App.2d 340, 350 [345 P.2d 78].
 
 [2]
 
 ) In the present case the court carefully considered the question of comparability and required the witness to adjust the sales prices to the date of value of the subject property. We find no abuse of discretion in the court's ruling.
 

 Plaintiff contends that its appraiser, Mr. Morrison, was unduly restricted in testifying to the effect of the easement on the use of the surface as a part of a service station site. The record reveals that the court merely required the witness to state his opinion before he went into the reasons. In granting defendant’s motion to strike Mr. Morrison’s testimony concerning his investigation on the effect of easements on other specific service stations and markets, the court expressly stated to plaintiff’s counsel, “You may go into it later on.” It is true that when plaintiff sought to introduce testimony through Mr. Morrison on the effect of easements on specific service stations and markets, the court required a preliminary showing that the easements contained terms and conditions similar to the ones contained in the easement sought by plaintiff. The admission of such testimony, like testimony relating to comparable sales, is a matter resting in the sound discretion of the court. We find no abuse of discretion in the court’s rulings.
 

 Plaintiff complains that the court erred in failing to give three requested instructions relating to definitions of fair market value and highest and best use. Although the requested instructions state correct propositions of law, they were adequately covered by the instructions given.
 

 Plaintiff contends that the evidence shows that defendant “took unfair advantage of the situation to enhance
 
 *902
 
 damages and failed to make a good faith effort to reduce or mitigate such damages.’’ The thrust of plaintiff’s contention appears to be that Mr. Hagen should not have been permitted to testify that the taking of the perpetual easement forced the removal of the proposed service station site 20 feet eastward towards Michigan Avenue. Plaintiff appears to be arguing that Mr. Hagen’s testimony in this respect was of doubtful credibility because the surface could be used in connection with the service station and, hence, relocation of the site would be unnecessary. This was simply a matter going to the weight of Mr. Hagen’s testimony and has nothing to do with mitigation of damages. In essence Mr. Hagen was merely testifying that in his opinion a service station site would require 150 feet of frontage exclusive of the easement.
 

 Plaintiff urges that defendant in cross-examining plaintiff’s chief design engineer improperly elicited testimony with respect to the valuation opinion of an appraiser employed by plaintiff whose opinion was set forth in plaintiff’s answer to defendant’s interrogatories and with respect to the amounts set forth in plaintiff’s affidavit for the order for immediate possession. The contention is not supported by the record. It shows that although plaintiff’s counsel initially objected to the introduction of such testimony, after considerable discussion in chambers he expressly withdrew his objections.
 

 It is unnecessary to discuss plaintiff’s remaining contentions other than to note that they simpfy relate to the credibility of the witnesses and the weight to be given their testimony, all of which were matters for the jury to pass upon. The record discloses that the witnesses were in basic agreement on the highest and best uses to which the property was adaptable, on the value of the rear portion of the property, and on the fact that the frontage had a higher value. The differences were on the market value of the frontage, whether the surface of the strip which was impressed with the easement could be utilized by the owner, and the extent of the special benefits conferred by the public improvement. Those differences were matters to be resolved by the jury. The jury resolved them by apparently finding that the rights reserved to the owner were such that the value of the strip taken equalled its fee value. The severance damage was far less than that fixed by Mr. Hagen and substantially less than testified to by Mr. Eeid, though more than that testified to by
 
 *903
 
 plaintiff’s witnesses. The special benefits were as testified to by Mr. Hagen and Mr. Reid but substantially less than fixed by plaintiff’s witnesses.
 

 Viewing the evidence in the light of the familiar rules respecting appellate review of the findngs of triers of fact, there was substantial evidence to support the jury’s findings.
 

 Affirmed.
 

 McCabe, P. J., and Kerrigan, J., concurred.
 

 [1]
 

 He explained how he arrived at the market value before the take as follows:
 

 ”Q By Mb. Grabes: $225,000. Can you explain to the jury, Mr. Hagen, how you arrived at that figure?
 

 “A I felt that this parcel at the off-ramp was worth $75,000.
 

 "I figured that the site next to it was worth $50,000, which is $125,000.
 

 ‘ ‘
 
 I felt that the balance of the acres was worth a hundred thousand.
 

 “Q
 
 So what value did you place on the total frontage land to a depth of a hundred thirty-five feet?
 

 “A $125,000.
 

 “Q And a value of a hundred thousand for the entire acreage lying behind the hundred thirty-five foot depth?
 

 “A Yes, six.”
 

 [2]
 

 The instant ease was tried before the effective date of section 1271.2 of the Code of Civil Procedure, now section 816, Evidence Code.