[Civ. No. 36210. Second Dist., Div. Four. Mar. 12, 1971.]

VENTURA COUNTY FLOOD CONTROL DISTRICT,
Plaintiff and Appellant, v.
SECURITY FIRST NATIONAL BANK et al.,
Defendants and Respondents.

**COUNSEL**

Herbert L. Ashby, County Counsel, and Edwin M. Osborne, Acting County Counsel, for Plaintiff and Appellant.

Nordman, Cormany, Hair & Compton, Charles R. McGrath and William H. Hair for Defendants and Respondents.

## OPINION

**JEFFERSON, Acting P. J.** — Plaintiff Ventura County Flood Control District (hereinafter referred to as County) appeals from a judgment in a condemnation case awarding to defendants $12,159 for 1.3142 acres of lemon ranch property, which was taken for a flood control channel right-of-way, and an additional $27,069, granted as severance damages. The case was tried by the court without a jury.

Plaintiff condemned a strip of property approximately 21.5 feet wide along the easterly portion of a parcel of approximately 30 acres in Ventura County which had been owned for 10 years by John Milton Diedrich and his wife. The property, which had been owned by members of the Diedrich family for approximately 80 years, had always been used for agricultural purposes and expert opinion supports the determination that this continues to be its highest and best use. An integral part of the agricultural property is a windbreak of cypress and eucalyptus trees situated on the condemned strip of property. The first eucalyptus and lemon trees were planted in 1952, when the cypress trees were already about 15 years old and well established.

The award made for the 1.3142 acres taken was based on expert opinion evidence of fair market value derived from market data and is not disputed by plaintiff. Plaintiff, however, contends that the trial court erred in its award of severance damages by basing its computations on inadmissible evidence, that is the loss of lemon productivity and income, which evidence was utilized by defendant's appraiser in formulating his opinion of the decrease in value of the remainder.

As a general rule, frequently stated, the trier of fact in determining the fair market value of property taken by condemnation may not capitalize the income or profits realized from a particular use of the land by the landowner. (*Stockton & Copperopolis R.R. Co.* v. *Galgiani,* 49 Cal. 139.) "It is settled that evidence of profits derived from a business conducted on the land is too speculative, uncertain and remote to be considered as a basis for ascertaining market value. [Citations.] On the other hand, it is the *general* rule that income from property in the way of rents is a proper element to be considered in arriving at the measure of compensation to be paid for the taking of property. [Citations.]" (*People* v. *Dunn,* 46 Cal.2d 639, 641 [297 P.2d 964].) This rule, however, is not so broad or inflexible as to disqualify the opinion of defendants' expert with respect to severance damages in the present case.

The elements considered by the trial court to constitute a diminution of the value of the remainder were the loss of 149 lemon trees which had to be destroyed to make room for planting a new windbreak, the cost of replacing the windbreak, and the reduction in fair market value of the grove during the 10-year period of growth to maturity of the trees composing the new or replacement windbreak. The appellant does not dispute the facts that the value of the windbreak and the destruction of 149 lemon trees rendered useless by the taking constitute proper considerations with respect to severance damages, but contends that the method of reckoning the depreciation in fair market value of the remainder was improper.

Testimony relating to severance damages was received from two appraisal experts, Mr. Pelmear for the appellant and Mr. Nielson for the respondents. The appellant's expert witness testified that, in his opinion, the windbreak was relatively valueless to the remainder and the respondents were entitled to only nominal severance damages of $2,000 for its loss. Mr. Nielson gave testimony demonstrating that the windbreak contributed substantially to the overall value of the lemon orchard as an economic unit. He showed that the windbreak protected the trees from winds which blow across the plain from the east and which occur frequently in the area. These winds cause extensive damage to citrus orchards, defoliating the trees, blowing off buds and fruit, scarring fruit which is then susceptible to disease, and scorching leaves, thus retarding growth of trees and maturation of fruit. Upon removal of the windbreak there would be no obstruction on the flat plain between the grove and Oxnard Air Force Base some miles to the east to restrict the force of these hot, dry and damaging winds. This opinion was corroborated by the opinion testimony of two other qualified witnesses. The trier of fact accepted the opinion of Mr. Nielson and took into consideration, in computation of the award of severance damages, the decreased fair market value of the remainder parcel as a consequence of the cost of replacement of the windbreak and the period of time for regrowth of the cypress and eucalyptus trees.

The trial court in determining severance damages found that the loss of 149 lemon trees was compensable at $43 per tree on the basis of Mr. Nielson's expert opinion. Since it is not customary to transplant mature, bearing citrus trees for commercial use, the establishment of fair market value must be based upon evidence other than nursery sale prices. Mr. Nielson capitalized net income of one tree over 15 years to arrive at a value of $43 and total compensation for 149 trees was computed as $6,407. This method is reasonable as a basis for fair market value. The trial court included in severance damages Mr. Nielson's estimate

of $2,050 for the cost of planting trees to form a new windbreak equal in length to that taken, stating that this figure was not included in its computation of fair market value of the part taken. This item covers the cost of buying small trees, planting, watering and staking them and caring for them during the 10-year growing period. Because the windbreak constituted an improvement which enhanced the value of the property, this sum is a compensable portion of the severance damage. (Code Civ. Proc., §§ 1248, 1249, 1249.1; *People* ex rel. *Dept. Pub. Wks.* v. *Flintkote Co.,* 264 Cal. App.2d 97 [70 Cal.Rptr. 27].)

The trial court awarded an additional sum of $18,612 for diminution of the fair market value of the remainder of the lemon orchard. In so doing, the court accepted the opinion of defendants' expert that the highest and best use of the property during the immediately foreseeable future was agricultural; that transplanting mature 80-foot tall trees for a windbreak was impractical and prohibitively costly; and that approximately 10 years would be required for the young trees to become sufficiently large and mature to afford the same protection as the windbreak trees taken.

Mr. Nielson said that he had taken into consideration the contemplated reduction of lemon productivity and fruit quality over the 10-year growth period. He had obtained from the packing house where the fruit was processed crop production figures relating to quality and quantity of fruit produced by defendants' trees over a period of five years preceding the take. The net figure obtained from the packing house was reduced by costs of cultivation to arrive at a net income which was further reduced by a figure representing reasonable ground rental for the Diedrich land. Mr. Nielson had then computed the diminution in the leasehold value of the acreage during the period of windbreak regrowth assuming the percentage lease customary for citrus groves in the area, which would return 40 percent of production as net rental payable to the landlord. He also computed the diminution in fair market value of the property in a sale to a willing informed purchaser in its after condition. He concluded that the remainder in the after condition would have approximately 10 percent less income in the first two years than in its before condition. This loss would be reduced proportionately over the next eight years as the windbreak matured and he, accordingly, totaled the estimates of loss for each year over a period of 10 years. The loss in leasehold value would be $28,337 while the loss in fair market value would be $19,612, each reduced to present value of the loss.

Mr. Nielson testified that the fair market value of the entire parcel before the taking was $288,000. He was of the opinion that its value after the

taking was $247,427. The difference of $40,528 included an estimate of $14,509 for the part taken and total severance damages of $26,019 which included $6,407 for the value of 149 lemon trees and $19,612 diminution in fair market value of the remainder as a consequence of loss of the windbreak. ■ The trial court accepted $6,407 for the value of 149 lemon trees and awarded $18,612 for diminution of fair market value of the remainder, plus $2,050 for planting new windbreak trees, arriving at a total of $27,019 for severance damages. Since this figure exceeds by $1,000 the maximum severance damage supported by expert testimony, the award must be reduced accordingly. (*Redevelopment Agency* v. *Modell,* 177 Cal.App.2d 321 [2 Cal.Rptr. 245].) This error in exceeding the legal maximum for severance damages can and should be corrected by modification of the judgment. (*Alton* v. *Rogers,* 127 Cal.App.2d 667, 675 [274 P.2d 487]; *Feckenscher* v. *Gamble,* 12 Cal.2d 482, 499-500 [85 P.2d 885].)

■ Severance damages must be based upon real physical disturbance of a property right and a decrease in market value of the property rather than upon remote possibilities which are highly speculative and conjectural. (*Arnerich* v. *Almaden Vineyards Corp.,* 52 Cal.App.2d 265 [126 P.2d 121]; *Sacramento, etc. Drainage Dist.* ex rel. *State Reclamation Bd.* v. *Reed,* 215 Cal.App.2d 60 [29 Cal.Rptr. 847].) It has frequently been held that loss of business, profits, goodwill or future income is not compensable. (*Stockton & Copperopolis R.R. Co.* v. *Galgiani,* 49 Cal. 139; *City of Los Angeles* v. *Allen's Grocery Co.,* 265 Cal.App.2d 274 [71 Cal.Rptr. 88].) Nonetheless, the reduction in probable income from the operation of the lemon grove as a result of the taking would be considered by a prospective purchaser in determining the fair market value and the price he would be willing to pay, and it therefore constitutes an acceptable reason for the opinion of severance damage asserted by defendants' appraiser. "A special value of land due to its adaptability for use in a particular business is an element which the owner of the land is entitled under the Fifth Amendment to have considered in determining the amount to be paid as just compensation upon a taking in eminent domain. [Citation.]" (*Mitchell* v. *United States,* 267 U.S. 341, 344-345 [69 L.Ed. 644, 647-648, 45 S.Ct. 293].)

The California Supreme Court acknowledges the compensability of elements which would be taken into consideration by a prospective purchaser and which would patently reduce the value of the remainder in his eyes. "Where the property taken constitutes only a part of a larger parcel, the owner is entitled to recover, inter alia, the difference in the fair market value of his property in its 'before' condition and the fair market value of

the remaining portion thereof after the construction of the improvement on the portion taken. Items such as view, access to beach property, freedom from noise, etc. are unquestionably matters which a willing buyer in the open market would consider in determining the price he would pay for any given piece of real property. Concededly such advantages are not absolute rights, but to the extent that the reasonable expectation of their continuance is destroyed by the construction placed upon the part taken, the owner suffers damages for which compensation must be paid.

" 'These elements of damages mentioned by the witnesses are not claimed by respondents as special damages, but are merely the reasons given by the experts for their opinions that the market value of the portion of the tract not taken would be diminished by reason of the taking of the 1/10-acre strip in front. . . . All of the matters mentioned were proper reasons to be advanced by the experts as bases for their opinions as to value. . . . Compensable items of severance damage, in fixing the fair market value of a remaining parcel, have been recognized to consist of impairment of light and air [citations], impairment of view [citations], invasion of privacy [citation], and deprivation of access [citation].' [Citations.]" (*Pierpont Inn, Inc.* v. *State of California,* 70 Cal.2d 282, 295 [74 Cal.Rptr. 521, 449 P.2d 737].)

Although profits and income from a business as such are not, therefore, independent items which constitute per se proper items of compensable damage, the matter of grove productivity may, in a case such as the present one, be considered in order to determine whether and how the value of the remainder for its immediate highest and best use has been affected. (See *San Bernardino Flood Control Dist.* v. *Sweet,* 255 Cal.App.2d 889 [63 Cal.Rptr. 640]; *People* ex rel. *Dept. Pub. Wks.* v. *Investors Diversified Services, Inc.,* 262 Cal.App.2d 367 [68 Cal.Rptr. 663]; *State of California* v. *Whitlow,* 243 Cal.App.2d 490, 499-500 [52 Cal.Rptr. 336].) The evidence as to reduction in productivity of the lemon trees upon removal of the windbreak was factual rather than merely speculative and there is no question that this should have an adverse impact upon the fair market value of the remainder which might include, among other things, the present value of the projected loss of net income in proportion to the value of the windbreak protection over a period of future years.

 The trial court, in exercise of its sound discretion, determines the competency and qualification of an expert witness (*People* v. *Hayward Bldg. Materials Co.,* 213 Cal.App.2d 457, 471 [28 Cal.Rptr. 782]), and the trier of fact is exclusive judge of the weight to be given to expert testimony. (*City of Gilroy* v. *Filice,* 221 Cal.App.2d 259, 268 [34 Cal.Rptr.

368].) Where it appears that the opinion of a valuation witness is based upon considerations which are proper as well as those which are not, the testimony may be admitted and the trier of fact shall determine its weight and credibility. (*San Bernardino County Flood Control Dist.* v. *Sweet, supra,* 255 Cal.App.2d 889, 902.) It cannot be said as a matter of law that the trial court's ruling on the admissibility of the testimony relating to the basis for the opinion of defendants' expert and its acceptance of his opinion was improper.

■ Finally, plaintiff contends that the trial court erred in failing to determine the value of special benefits which the work of improvement conferred upon defendants' land. The trial court found on conflicting evidence that the benefits were general and that no special benefits accrued to defendants. "It has long been the rule in California that severance damages are not to be diminished by general benefits resulting from a given public improvement." (*Pierpont Inn, Inc.* v. *State of California, supra,* 70 Cal.2d 282, 296.)

For reasons already stated the judgment is modified by reducing the total award of severance damages of $27,019 by $1,000 leaving an award of severance damages in the amount of $26,019. As so modified, the judgment is affirmed. Respondents to recover costs on appeal. (*In re Redevelopment Plan for Bunker Hill,* 61 Cal.2d 21, 68-71 [37 Cal.Rptr. 74, 389 P.2d 538].)

Kingsley, J., and Dunn, J., concurred.

A petition for a rehearing was denied March 26, 1971, and appellant's petition for a hearing by the Supreme Court was denied May 6, 1971.