[No. B117274. Second Dist., Div. Six. Apr. 7, 1999.]

VENTURA COUNTY FLOOD CONTROL DISTRICT, Plaintiff, Cross-defendant and Appellant, v.
DANIEL M. CAMPBELL, Defendant, Cross-complainant and Appellant; TRUESTONE CONCRETE PRODUCTS INCORPORATED et al., Cross-complainants and Respondents.

212

214

**COUNSEL**

James L. McBride, County Counsel, Dennis L. Slivinski and Robert R. Orellana, Assistant County Counsel, for Plaintiff, Cross-defendant and Appellant.

Crosby, Heafey, Roach & May, Kathy M. Banke, M. Reed Hunter and Benjamin G. Shatz for Defendant, Cross-complainant and Appellant and for Cross-complainants and Respondents.

## OPINION

**BURKE, J.**[*]—The Ventura County Flood Control District (District) appeals from the $2.6 million judgment in condemnation for taking the undivided one-half ownership of the Grubb Ranch from respondents Daniel M. Campbell, Truestone Concrete Products Incorporated and Johnnie Campbell (Campbell). District condemned the land for a flood control project.

District asserts that the trial court erred by permitting evidence of the $2.7 million value of underground aggregate in addition to the $2.5 million value of the land as used for agriculture. District argues Campbell simply lost agricultural land with some urban potential that had sand and gravel in place.

Campbell cross-appeals from the dismissal of his second amended cross-complaint, arguing violation of his civil rights, due process and failure to comply with the California Environmental Quality Act (CEQA) in approving the project. Campbell also asserts that the award of $150,000 in litigation costs is insufficient.

We affirm the judgment and the award of fees.

### FACTS

Campbell and James R. Alger owned approximately 67 acres of land known as the Grubb Ranch, in undivided one-half interests as tenants in common. The property is zoned as open space with a mineral protection overlay. Their interests in the Grubb Ranch included mineral rights, including aggregate. Campbell owns Truestone Concrete Products Incorporated, which manufactures and sells various concrete building products comprised of sand and gravel aggregate.

In August 1995, District contracted with Southern Pacific Milling (S.P. Milling) to excavate basins for the project, allegedly without notice to Campbell or competitive bidding, and in violation of the Public Contract Code. Under the contract, District would make the Grubb Ranch available to S.P. Milling for excavation on or before January 1, 1996, and S.P. Milling

---

[*]Judge of the San Luis Obispo Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

would pay District about $1.3 million in royalties for the aggregate. The contract lapsed. Campbell sought to mine the aggregate, but the county planning agency determined he would need an environmental impact report (EIR) for a permit to do so.

In November 1995, District offered to purchase the Grubb Ranch for $35,000 per acre without a required appraisal, allegedly on the basis of a false listing supplied to District by S.P. Milling. (Gov. Code, § 7267.1, subd. (b).) Campbell rejected the offer, and, on January 31, 1996, District wrote counsel for respondents and the Algers stating its determination to acquire the entire Grubb Ranch for a flood control project.[1]

District adopted a revised initial study and negative declaration reflecting its determination to obtain the entire Grubb Ranch rather than just a portion of it. Campbell asserts he received notice neither of the revision as required by Code of Civil Procedure section 1245.235 nor of District's intent to adopt a resolution of necessity to condemn his property.

On March 11, 1996, the trial court heard Campbell's petition for writ of mandate challenging District's approval of the project without an EIR. The court denied the petition. Campbell defaulted in appealing the petition to this court. We dismissed it.

On March 26, 1996, District adopted a resolution of necessity, provided formal notice and filed the instant eminent domain action against Campbell and the Algers to acquire the Grubb Ranch for its flood control facility. After filing its summary of basis, District deposited $2,373,504 as the probable amount of just compensation. On April 8, 1996, the court ordered possession to District, effective August 7, 1996.

Campbell's motion to reconsider, vacate or stay the order for possession and resolution of necessity was denied. His petition to this court for writ of mandate and request for stay was denied and our Supreme Court denied review of these orders. Campbell and the Algers jointly answered the complaint.

On July 24, 1996, the Algers filed substitution of counsel. Campbell sued the Algers and District to exercise his right of first refusal to purchase the Algers' interests in the property. Campbell recorded a lis pendens on the property.

On September 30, 1996, Campbell filed the instant cross-complaint seeking declaratory and injunctive relief, asserting violations of due process,

---

[1]The Algers are not parties to this appeal.

equal protection, civil rights and unjust enrichment. He included a petition for writ of mandate asserting violations of CEQA.

On October 3, 1996, the Algers entered into a stipulated judgment in condemnation with District to relinquish their one-half interest in the land for $1,178,500. Campbell did not challenge the judgment in condemnation entered between the Algers and District.

District solicited proposals to excavate aggregate from the Grubb Ranch. The solicitation documents stated that "[p]roposals from parties that are challenging the District's right to possess or condemn the property . . . will . . . be rejected." In November, District received two royalty bids: one from S.P. Milling at $2 per cubic yard; the other from CalMat Company at $3.01 per cubic yard. District accepted CalMat's bid.

The trial court granted District's motion for summary adjudication on Campbell's claims of violation of CEQA, bid provisions, defective notice for the resolution of necessity and equal protection. The court denied the motion as to substantive due process in project planning and condemnation, his civil rights claim for due process violations and unjust enrichment.

In May 1997, District and Campbell filed their respective final statutory settlement offers and demands. The trial court denied District's motions *in limine* to exclude expert testimony regarding the value of mining the aggregate. The court permitted evidence that CalMat paid District a royalty of $3.01 per cubic yard of aggregate. The value of the 900,000 cubic yards of aggregate removed is about $2.7 million. The value of the land as agricultural land, without the aggregate, is about $2.4 million.

The trial court denied all of Campbell's affirmative defenses and objections to District's right to take. Except for the claim of unjust enrichment, the court granted judgment on the pleadings to District on the remaining causes in Campbell's cross-complaint.

In the valuation phase of trial, District argued valuation of $37,000 per acre based on the land's agricultural use with a supposed $3,000 per acre "premium" for the aggregate. It claimed comparable sales at about $27,000 and $30,000 per acre for land in the area. Campbell presented evidence of the value of the agricultural land including the aggregate, based on the CalMat contract and capitalizing the income from the aggregate.

The jury found the fair market value of the land to be $5.2 million. The judgment awarded Campbell $2.6 million in condemnation for his one-half interest in the property but nothing on his cross-complaint.

District's motions for judgment notwithstanding the verdict and for new trial were denied. The court awarded costs and litigation expenses of $150,000. District appeals from the judgment entered August 22, 1997, the order denying the motions for judgment notwithstanding the verdict and new trial and the order regarding litigation expenses.

Campbell cross-appeals from the judgment of dismissal of August 22, 1997 on his cross-complaint, from rulings on motions for summary adjudication of issues alleged in his cross-complaint, on defenses and objections to the right to take stated in his answer, from the order granting District's motion for judgment on the pleadings as to substantive due process and from the order denying certain litigation expenses. (Code Civ. Proc., §§ 904.1, 906.)

This appeal and cross-appeal followed.

DISCUSSION

*Just Compensation for Taking*

"The Fifth Amendment of the Constitution provides that private property shall not be taken for public use without just compensation. Such compensation means the full and perfect equivalent in money of the property taken. The owner is to be put in as good position pecuniarily as he would have occupied if his property had not been taken." (*United States* v. *Miller* (1943) 317 U.S. 369, 373 [63 S.Ct. 276, 279-280, 87 L.Ed. 336, 342], fns. omitted; see also *Almota Farmers Elevator & Whse. Co.* v. *U.S.* (1973) 409 U.S. 470, 473-474 [93 S.Ct. 791, 794, 35 L.Ed.2d 1, 7].) "[J]ust compensation is based on the loss the owner suffers rather than the benefit which the taker receives. [Citations.] What is to be valued for that purpose is what the involuntary sellers have to sell rather than what the public buyer seeks to acquire." (*People* ex rel. *Dept. Pub. Wks.* v. *Lynbar, Inc.* (1967) 253 Cal.App.2d 870, 880 [62 Cal.Rptr. 320], fn. omitted.) The owner is entitled to fair market value, but that term is "not an absolute standard nor an exclusive method of valuation." (*U.S.* v. *Virginia Electric Co.* (1961) 365 U.S. 624, 633 [81 S.Ct. 784, 790-791, 5 L.Ed.2d 838, 847]; and see *Kimball Laundry Co.* v. *U.S.* (1949) 338 U.S. 1, 5-6 [69 S.Ct. 1434, 1438, 93 L.Ed. 1765, 1771-1772, 7 A.L.R.2d 1280].) Although we disregard the special adaptability or peculiar fitness of the land for idiosyncratic buyers and sellers, the property should be valued for all uses to which it is reasonably adaptable. (*Miller, supra*, at p. 375 [63 S.Ct. at pp. 280-281, 87 L.Ed. at p. 343]; *Lynbar, supra*, at pp. 880-881.)

" 'The word "just" in the Fifth Amendment evokes ideas of "fairness" and "equity" . . . .' " (*U.S.* v. *Virginia Electric Co., supra*, 365 U.S. at p. 631 [81

S.Ct. at p. 789, 5 L.Ed.2d at p. 846], ellipses in *Virginia Electric; County of San Diego* v. *Miller* (1975) 13 Cal.3d 684, 691-692 [119 Cal.Rptr. 491, 532 P.2d 139].) Our statutory scheme for eminent domain recognizes the principle that compensation is measured by fair market value assuming "full knowledge of all the uses and purposes for which the property is reasonably adaptable and available," and where there is no relevant, comparable market, value is determined "by any method of valuation that is just and equitable." (Code Civ. Proc., § 1263.320; see § 1263.310.)

### *District's Contentions Concerning Valuation*

■ District contends that the trial court should have limited evidence of the value of the Grubb Ranch to its agricultural use on the date of valuation, excluding evidence of the value of the mineral rights in the land. District asserts that Campbell's evidence improperly focused on the value of the aggregate extracted from the land to develop the project, showing enhanced value attributable to the project. District argues that the trial court erred in permitting evidence of a hypothetical market for the aggregate. District argues that Campbell's evidence improperly valued component parts of the property. District asserts the court improperly permitted the evidence and the verdict to promote fairness. We disagree with District's positions.

■ For purposes of just compensation, property includes "every sort of interest the citizen may possess." (*U.S.* v. *General Motors Corp.* (1945) 323 U.S. 373, 378 [65 S.Ct. 357, 359, 89 L.Ed. 311, 318, 156 A.L.R. 390]; Code Civ. Proc., § 1235.170.) "Condemnation of the fee includes all interests which aggregate the fee." (2 Nichols on Eminent Domain (rev. 3d ed. 1995) § 5.01[5], p. 5-37.)

"In determining just compensation in eminent domain proceedings, the existence of valuable mineral deposits in the land taken constitutes an element which may be considered insofar as it influences the market value of the land." (26 Am.Jur.2d, Eminent Domain, § 338, p. 751; *Montana Railway Co.* v. *Warren* (1890) 137 U.S. 348, 352-354 [11 S.Ct. 96, 97, 34 L.Ed. 681, 682-683] [value of minerals suspected to exist on parcel in area of proven mineral veins may be considered in eminent domain proceedings]; see generally, *Watt* v. *Western Nuclear, Inc.* (1983) 462 U.S. 36, 46-47 [103 S.Ct. 2218, 2225, 76 L.Ed.2d 400, 409-410] [gravel is a mineral].) "The presence of mineral deposits, sand, clay, gravel . . . is therefore an element of value to be considered in arriving at market value." (26 Am.Jur.2d, Eminent Domain, § 338, p. 751.) Although it is generally not proper to reach an award by separately evaluating the land and the deposits, "it is possible to

capitalize potential royalties, by multiplying the reasonably probable royalty rate by the estimated tonnage of mineral in place and reducing the result to present value." (*Id.*, at pp. 751, 752.)

Such evidence is proper where there is proof of an active market for the minerals in question, that such transactions commonly take the form of royalty payments and that the estimate for recoverable deposits is not too speculative. (26 Am.Jur.2d, Eminent Domain, § 338, pp. 751, 752.) "This method results in an accurate assessment of the capitalized net profit which the condemnee could expect to realize, if the condemnee remained in possession and performed the work, and it is that interest which the condemnee would be able to market to a willing buyer desiring to perform the extraction and realize those profits for itself." (*Ibid.*)

### Valuation of the Land Including the Aggregate

District's valuation of $37,000 per acre improperly discounts the value of the aggregate to little or nothing based on supposedly comparable sales of land with some aggregate. District does not concede that CalMat's bid or S.P. Milling's bid represents reasonable value for the aggregate. These open bids accepted shortly after the valuation date are strong indicators of the value of aggregate to the private sector. District refused to acknowledge even the $0.68 figure it now suggests the aggregate may be worth. Knowledgeable buyers and sellers would not ignore the valuable aggregate any more than they would a gold, diamond or basalt mine. The value of the aggregate is neither driven by the project nor is it the project, as suggested by District.

Campbell purchased the property to provide a ready, reliable source of aggregate for his Truestone business knowing that the supply of aggregate is dwindling in a rapidly growing community. As the trial court found, District hoped to pay for the project with the royalties it would obtain from the aggregate.

The trial court permitted Campbell to present evidence that CalMat's contract to pay a royalty to District of $3.01 per cubic yard of aggregate would generate an income stream currently valued at $4,947,868.

District argues that such evidence should not have been considered for valuation purposes because: (1) the November 1996 contract between CalMat and District postdated the April 1996 condemnation valuation date; (2) the property should have been valued solely on its use for agricultural purposes in April 1996, not including the aggregate; and (3) in bidding

$3.01, CalMat knew it would not incur costs for project engineering, environmental review or reclamation plans already prepared by District.

District relies on *County of San Diego* v. *Rancho Vista Del Mar, Inc.* (1993) 16 Cal.App.4th 1046 [20 Cal.Rptr.2d 675]. Its reliance is misplaced. In *Rancho Vista Del Mar*, the county condemned the property to build a jail. The owner sought valuation based on the use of the property for a jail. The court did not permit such valuation because detention facilities are "uniquely governmental"; there is no private sector equivalent. (*Id.*, at pp. 1062, 1064; accord, *Merced Irrigation Dist.* v. *Woolstenhulme* (1971) 4 Cal.3d 478 [93 Cal.Rptr. 833, 483 P.2d 1] [land condemned for public reservoir may not be appraised for such use].)

But mining and use of aggregate are not uniquely governmental. Unlike *Rancho Vista Del Mar* or *Merced Irrigation*, Campbell did not contend that his land should be valued as a flood control project. He asserted that the aggregate is an integral part of the land condemned. The open bids by S.P. Milling and CalMat, private building materials companies, establish an existing market for scarce aggregate in the community. The fact that the aggregate was extracted to provide a basin for the flood control project does not change its intrinsic value to the private sector for building material.

In *People* ex rel. *Dept. of Water Resources* v. *Andresen* (1987) 193 Cal.App.3d 1144 [238 Cal.Rptr. 826], the Department of Water Resources condemned 689 acres of land to retrofit and repair the adjacent San Luis Reservoir. The land included a 134-acre basalt rock quarry. The department argued, as here, that the land should be valued "as mere pasture land" because "the defendants did not have an existing rock quarry business." (*Id.*, at pp. 1150-1151, 1153.) The jury and the appellate court rejected department's theory that the value of the rock quarry should be ignored. (*Id.*, at pp. 1166-1167; see also *United States* v. *Wateree Power Company* (4th Cir. 1955) 220 F.2d 226, 231 [condemnee may show that highest and best use is not current use as woodland but industrial use]; *Morton Butler Timber Co.* v. *United States* (6th Cir. 1937) 91 F.2d 884, 891 [compensation should be estimated by reference to uses for which property is suitable, considering community development reasonably expected in immediate future].) As in *Andresen*, the jury here rejected District's positions.

*Comparable Sales*

District contends that the court ran afoul of Evidence Code section 822, subdivision (a)(1), which makes inadmissible "[t]he price or other terms and circumstances of an acquisition of property or a property interest if the

acquisition was for a public use for which the property could have been taken by eminent domain, except that the price or other terms and circumstances of an acquisition of property appropriated to a public use or a property interest so appropriated shall not be excluded under this section if the acquisition was for the same public use for which the property could have been taken by eminent domain."

As *South Bay Irr. Dist.* v. *California-American Water Co.* (1976) 61 Cal.App.3d 944, 983 [133 Cal.Rptr. 166] explains, Evidence Code section 822 only precludes evidence of the price paid by condemnors for acquisitions of other land for public use because "the price paid under the circumstances of such a sale is not a reasonable or fair test of market value." We reject District's contention that the open bids to remove the aggregate were inadmissible per se as reflecting enhanced value simply because removal occurred to create the flood control project. The price paid for the aggregate more likely reflects its value as building material on the open market at the time of the bids. That value has nothing to do with the fact District needed to create a flood control basin.

District argues that valuing the take by adding the value of the aggregate to the value of the land for agricultural use is improper as the summation of component parts. (*San Bernardino County Flood Control Dist.* v. *Sweet* (1967) 255 Cal.App.2d 889 [63 Cal.Rptr. 640].) We disagree. In *Sweet*, the assigned error was dividing an integrated parcel as if it were four separate parcels and summing up the highest and best use for each section of the land. (*Id.*, at pp. 896-897.) *Sweet* held that a valuation witness may testify to the differing value for uses of parts of a parcel because a knowledgeable buyer would do so, provided valuation is on the property as a whole. (*Id.*, at pp. 900, 903.) District conceded that here the jury valued the property as a whole and was properly so instructed. The trial court properly permitted the jury to consider the value of the underground aggregate in addition to the value of the land as undeveloped, agricultural land to arrive at the value of the property as a whole.

### Cross-appeal

Campbell's cross-appeal seeks dismissal of the condemnation proceeding. Campbell contends that District violated substantive and procedural due process by contracting with S.P. Milling to extract the aggregate before condemning the Grubb Ranch without notice, open bidding or consideration of alternate sites. Campbell argues that District's resolution of necessity was a predetermined sham. Campbell's positions are without merit.

Campbell and his counsel received notice of the hearing for the resolution of necessity. His counsel appeared and made a presentation at the hearing.

The trial court did not abuse its discretion in dismissing his claims of violation of substantive due process. (Cf. *Redevelopment Agency* v. *Norm's Slauson* (1985) 173 Cal.App.3d 1121, 1127 [219 Cal.Rptr. 365] [agency irrevocably committed to project before issuance of resolution of necessity].) District's acts were not arbitrary and discriminatory but were reasonably related to a proper legislative purpose. (*Pennell* v. *San Jose* (1988) 485 U.S. 1, 11 [108 S.Ct. 849, 857, 99 L.Ed.2d 1, 14].) Moreover, the taking provisions of the Fifth Amendment to the United States Constitution preempt his substantive due process claims. (See generally, *Albright* v. *Oliver* (1994) 510 U.S. 266, 273 [114 S.Ct. 807, 812-813, 127 L.Ed.2d 114, 123-124]; *Sinclair Oil Corp.* v. *County of Santa Barbara* (9th Cir. 1996) 96 F.3d 401, 407; *Armendariz* v. *Penman* (9th Cir. 1996) 75 F.3d 1311, 1325-1326; see also Cal. Const., art. I, § 19; cf. *Clark* v. *City of Hermosa Beach* (1996) 48 Cal.App.4th 1152, 1183-1187 [56 Cal.Rptr.2d 223] [due process claims limited to those that shock the conscience].)

Campbell has no fundamental vested right to mine the aggregate nor is he a member of a suspect class. District complied with due process requirements. Accordingly, Campbell may not sue for violation of federal civil rights pursuant to 42 United States Code section 1983.

Res judicata forecloses arguing purported violations of CEQA now. (*Lyons* v. *Security Pacific Nat. Bank* (1995) 40 Cal.App.4th 1001, 1015 [48 Cal.Rptr.2d 174].) Moreover, District did not grossly abuse its discretion in locating and planning the project. It is located to intercept floods, protect the high groundwater table and conserve farmland. (*Santa Cruz County Redevelopment Agency* v. *Izant* (1995) 37 Cal.App.4th 141, 150 [43 Cal.Rptr.2d 366]; *Anaheim Redevelopment Agency* v. *Dusek* (1987) 193 Cal.App.3d 249, 255 [239 Cal.Rptr. 319]; Code Civ. Proc., § 1245.255, subd. (b).)

Campbell's equal protection claim is also without merit. There is a rational relationship to a legitimate state interest in requiring bidders to withdraw or refrain from legal challenges to a public project needed to prevent flooding. (See generally, *Pennell* v. *San Jose, supra,* 485 U.S. at p. 14 [108 S.Ct. at p. 859, 99 L.Ed.2d at pp. 15-16]; *Cleburne* v. *Cleburne Living Center, Inc.* (1985) 473 U.S. 432, 440-441, 446 [105 S.Ct. 3249, 3254, 3257-2358, 87 L.Ed.2d 313, 320-321, 324]; *Long Beach Equities, Inc.* v. *County of Ventura* (1991) 231 Cal.App.3d 1016, 1041 [282 Cal.Rptr. 877].)

### Attorney's Fees

Code of Civil Procedure section 1250.410 provides that only the final offer and demand of the parties are to be considered by the trial court in determining entitlement to litigation expenses. "If the court . . . finds that the offer of the plaintiff was unreasonable and that the demand of the defendant was reasonable viewed in the light of the evidence admitted and the compensation awarded . . . the costs allowed . . . shall include the defendant's litigation expenses." "A property owner who files a reasonable demand, but is required nonetheless to litigate because of the public agency's unreasonable position, can be fully compensated for his litigation expenses." (*Santa Clara Valley Water Dist.* v. *Gross* (1988) 200 Cal.App.3d 1363, 1368 [246 Cal.Rptr. 580].)

In *Los Angeles County Metropolitan Transportation Authority* v. *Continental Development Corp.* (1997) 16 Cal.4th 694, 720 [66 Cal.Rptr.2d 630, 941 P.2d 809], our Supreme Court explained the guidelines trial courts should consider in applying Code of Civil Procedure section 1250.410. They are " ' "(1) the amount of the difference between the offer and the compensation awarded, (2) the percentage of the difference between the offer and [the] award . . . and (3) the good faith, care and accuracy in how the amount of [the] offer and the amount of [the] demand, respectively, were determined." ' "

District's final offer was $1,650,000. That is $950,000 less than the $2.6 million verdict or 63 percent of the verdict. Campbell's final demand was $3,172,000. That is $572,000 more than the verdict.

The respective mathematical disparity is only one factor for the trial court to consider. (*Los Angeles County Metropolitan Transportation Authority* v. *Continental Development Corp.*, *supra*, 16 Cal.4th at p. 720.) Good faith, care and accuracy in how the amount of the offer and demand were determined are also important factors. (*Id.*, at pp. 720-721.)

The trial court found that District "attempted to construct a flood control project at the expense of the defendant." Although both sides negotiated and were willing to compromise, "the negotiations broke down on [District's] unwillingness to acknowledge any value for the aggregate." The court explained that District "produced no appraiser to testify to the value of the underlying aggregate and put on an expert instead to deny that the defendant could ever realize any value of the aggregate. [¶] The jury found the aggregate to have value and that value was the difference between the County's offer and the defendant's demand. For [District] not to consider for

any purpose the value of the underlying aggregate is unreasonable." Thus, the court found District's offer unreasonable and Campbell's offer reasonable in light of the evidence admitted and the compensation awarded.

Code of Civil Procedure section 1235.140, subdivision (a), defines litigation expenses to include "[a]ll expenses reasonably and necessarily incurred in the proceeding in preparing for trial, during trial, and in any subsequent judicial proceedings." They also include "[r]easonable attorney's fees, appraisal fees, and fees for the services of other experts where such fees were reasonably and necessarily incurred to protect the defendant's interests . . . ." (Code Civ. Proc., § 1235.140, subd. (b).)

In determining the amount of litigation expenses, the trial court considers the offer required to be made by the plaintiff pursuant to Government Code section 7267.2 and any other written offers and demands filed and served prior to or during the trial. (Code Civ. Proc., § 1250.410, subd. (b).) During trial, District increased its offer to $1,850,000.

The trial court did not abuse its discretion in awarding attorney fees of $150,000 to Campbell in addition to ordinary costs. (See generally, *Community Redevelopment Agency* v. *Krause* (1984) 162 Cal.App.3d 860 [209 Cal.Rptr. 1].)

The judgment and the award of fees are affirmed. Costs are awarded to Daniel M. Campbell.

Gilbert, Acting P. J., and Yegan, J., concurred.

A petition for a rehearing was denied May 6, 1999, and the opinion was modified to read as printed above. The petition of appellant Ventura County Flood Control District for review by the Supreme Court was denied July 14, 1999.