[No. C034813. Third Dist. Sept. 10, 2001.]

CITY OF STOCKTON, Plaintiff and Appellant, v.
ALBERT BROCCHINI FARMS, INC., Defendant and Appellant.

194

**196**

COUNSEL

Richard K. Denhalter, City Attorney, Barbara J. Anderson, Assistant City Attorney; Freeman, D'Aiuto, Pierce & Gurev, Maxwell M. Freeman, Ronald J. D'Aiuto and Thomas H. Keeling for Plaintiff and Appellant.

Brown, Hall, Shore & McKinley and John H. McKinley for Defendant and Appellant.

OPINION

DAVIS, J.—Plaintiff City of Stockton (City) moved to exclude the testimony of the valuation expert for defendant Albert Brocchini Farms, Inc., in this action for eminent domain. The trial court found the expert's opinion did not have a sufficient factual basis and excluded it. The defendant then stipulated to entry of judgment at the value that the plaintiff's experts assigned. On appeal, the defendant argues the trial court should have allowed the expert to testify to the discounted cash value of the income that could be realized if a landfill operated on its property. Plaintiff City cross-appeals, arguing the trial court erred in failing to offset interest on the award with the value of the defendant's continued permissive occupation of the property after plaintiff City obtained the right of possession.

We conclude that the income to be derived from placing landfill on a property is not akin to income from mineral or other natural resources on a property, thus the attempt to base value on a hypothetical landfill operation is subject to the traditional ban on such evidence. We further conclude a business loss of a defendant in possession does not preclude offsetting the fair rental value against interest for the period of possession. We thus affirm as modified.

We eschew a separate statement of background facts. Those necessary to an understanding of the issues will be incorporated in the discussion.

DISCUSSION

I. *The Defendant's Appeal*

A

As we noted, the plaintiff moved before trial to exclude the testimony of the defendant's valuation expert, who had crafted a discounted cash flow of

the income that could be generated from hypothetical landfill operations on the defendant's agricultural property. Other public and private landfills are adjacent to the property, and the plaintiff's intended use of the property is as an extension of its current landfill. The plaintiff argued an income-based valuation of the property was invalid, the expert had failed to establish the likelihood that a private developer could obtain the necessary permits for a landfill,[1] and the expert had made speculative assumptions regarding costs and demand in projecting income. The plaintiff was willing to stipulate that a landfill was a suitable use, which would obviate the need for this opinion as proof on that issue.[2]

In opposition, the defendant argued a landfill was analogous to cases involving land with mineral rights,[3] and thus it was proper to project potential income. The defendant also claimed its expert "did extensive investigation into the availability of permitting this site and concluded that it was not only possible but probable." Finally, it contested the characterization of its expert's assumptions as speculative.

During argument on the motion in limine, the plaintiff disputed the need to resort to any method of valuation other than comparable sales, because landfills can be placed on any land. The defendant asserted the proximity to existing landfills made the property unique. Moreover, landfill values were site-specific, so its expert had been unable to find any comparable sales. The defendant also argued a discounted cash value was the method used in the landfill business to determine a sales price between private parties.

In its remarks during argument, the court did not indicate any disapproval of the use of the income method for valuing the property, which it believed should have a value as landfill that was somewhat higher than ordinary agricultural acreage. However, with the highly competitive market in the landfill industry, the court was concerned with the assumptions on which the expert relied for costs and demand. "I don't have any question it is probably a better guess than any lay person would have. But even as an expert, it has to be based on something other than his best guess. [¶] It has to be factually something you can put your hands on and say this is historically true." The

---

[1]*San Diego Metropolitan Transit Development Bd. v. Cushman* (1997) 53 Cal.App.4th 918, 928 [62 Cal.Rptr.2d 121] (*Cushman*); *Redevelopment Agency v. Contra Costa Theatre, Inc.* (1982) 135 Cal.App.3d 73, 84 [185 Cal.Rptr. 159].

[2]*People ex rel. Dept. of Water Resources v. Andresen* (1987) 193 Cal.App.3d 1144, 1161 [238 Cal.Rptr. 826] (*Andresen*).

[3]E.g., *Ventura County Flood Control Dist. v. Campbell* (1999) 71 Cal.App.4th 211 [83 Cal.Rptr.2d 725] (*Ventura County Flood Control Dist.*); *Andresen, supra*, 193 Cal.App.3d 1144.

court thus excluded the testimony: "I find that his projection on anticipated income on the hypothetical business on the landfill operation and the many . . . unknown factors that he has to project for reaching the hypothetical income . . . too speculative under the eminent domain law." The court cited the expert's choice of a discount factor in particular. The defendant submitted an offer of proof of its expert's testimony, in which he concluded the value of the property as an extension of the adjoining landfills was within 10 percent either way of $7 million.

### B

The parties stipulated the record on appeal would include the entirety of the expert's deposition transcript and all of its supporting exhibits. However, since the trial court confined itself to an examination of the expert's report, it would be inappropriate for us to go beyond that part of the record. As the trial court expressly did not rely on the other information in making its ruling, this would be tantamount to taking additional evidence on appeal in a matter on which we do not exercise de novo review.[4] Moreover, the specifics of the factual underpinnings are irrelevant in light of our ruling.

■ California's statutory scheme for proceedings concerning eminent domain embody the protections in our state and federal charters that mandate the payment of just compensation for the taking of private property for a public use.[5] However, despite the defendant's arguments to the contrary, this involvement of a constitutional right does not change the rules of evidence in an eminent domain proceeding. It does not deny due process to cut off a litigant's right to present evidence where the party fails to comply with established evidentiary standards for appraisal methods.[6] Thus, when a valuation expert employs an unsanctioned methodology, the opinion may be excluded in part or in whole in the discretion of the trial court.[7]

■ Generally, a defendant may not present evidence of income from a business that is *conducted on* the condemned property, but may offer proof

---

[4]*Rollins v. City and County of San Francisco* (1974) 37 Cal.App.3d 145, 148 [112 Cal.Rptr. 168] (courts take additional evidence on appeal only rarely, and usually for purpose of affirming).

[5]*City of Oakland v. Oakland Raiders* (1982) 32 Cal.3d 60, 64-65, 73 [183 Cal.Rptr. 673, 646 P.2d 835, 30 A.L.R.4th 1208].

[6]*Redevelopment Agency v. Tobriner* (1989) 215 Cal.App.3d 1087, 1097 [264 Cal.Rptr. 481].

[7]*County Sanitation Dist. v. Watson Land Co.* (1993) 17 Cal.App.4th 1268, 1282 [22 Cal.Rptr.2d 117].

of rental income from the *property itself* and any improvements presently in existence.[8] Thus, "vacant land cannot be the subject of an income study . . . ."[9] The prohibition on evidence of business income dates back to the early days of our jurisprudence and is based on the principle that even profits from an actual business depend on so many variables that any valuation derived from them is too conjectural and speculative.[10] A fortiori, the profits of a hypothetical business are viewed with greater skepticism.[11]

The defendant attempts to escape from these evidentiary restrictions on admission of business income by analogizing a property's storage capacity to other valuable natural resources such as mineral deposits. The right to future exploitation of undeveloped natural resources has a present and ascertainable value for purposes of eminent domain.[12] In *Pacific Gas & Electric Co. v. Zuckerman*, we recognized a property's storage capacity in theory is a valuable interest, although the case does not help in formulating a method for computing this value, for we excluded the expert's opinion as improperly linking the market price for a commodity with the value of storing the commodity.[13] An analogy between natural resources and storage capacity fails in two respects.

First, mineral interests are a commodity with an intrinsic value. "The opportunity for unbridled speculation" in basing an opinion on the value of such interests is remote where there are "substantial and consistent markets with a constant demand."[14] Landfill for solid waste, on the other hand, is an inchoate service. As the trial court noted, the market determining its value is highly competitive. Its volatility is also subject to political factors such as the award of collection franchises or public opposition to siting, and the efficacy of conservation and recycling efforts to change the disposal habits of the citizenry. Under these circumstances, a claimed expertise at fixing a value is chimerical.

[8]*Cushman, supra,* 53 Cal.App.4th at pages 929-930; *Andresen, supra,* 193 Cal.App.3d at pages 1162-1163; 1 Condemnation Practice in California (Cont.Ed.Bar 2d ed. 2000) Just Compensation, section 4.50, page 137; Evidence Code section 819.

[9]14 Dankert, California Real Estate Law and Practice (2000) section 508.11[4], page 508-20.

[10]*S. & C. R. R. Co. v. Galgiani* (1874) 49 Cal. 139, 140; accord, 5 Nichols, Eminent Domain (3d ed. rev. 2000) section 19.06[7], pages 19-51 to 19-52.

[11]*County of San Diego v. Rancho Vista Del Mar, Inc.* (1993) 16 Cal.App.4th 1046, 1059 [20 Cal.Rptr.2d 675]; *Andresen, supra,* 193 Cal.App.3d at page 1161; 4 Nichols, Eminent Domain, *supra,* section 12B.08[2], pages 12B-52 to 12B-53.

[12]*Ventura County Flood Control Dist., supra,* 71 Cal.App.4th at page 219; 1 Condemnation Practice in California, *supra,* Just Compensation, section 4.72, page 174.

[13]*Pacific Gas & Electric Co. v. Zuckerman* (1987) 189 Cal.App.3d 1113, 1132-1133 [234 Cal.Rptr. 630] *(PG&E).*

[14]*Andresen, supra,* 193 Cal.App.3d at page 1165 (granite).

Furthermore, the defendant fails to acknowledge that even where evidence of the value of mineral interests is admissible, the income is not an independent value that is added to the value of the unimproved land; the property is still valued as a unit with the enhanced value to a buyer of acquiring property with the mineral interest.[15] The trial court, as we noted above, correctly articulated this concept when it stated the defendant should be entitled to an enhancement over the value of ordinary agricultural acreage, but the defendant needed to provide a basis for this other than hypothetical business income.

In short, we find no abuse of discretion in the exclusion of the proposed opinion of the defendant's valuation expert. For whatever value one should appraise out-of-state precedent on this issue, the recent decision of an intermediate Indiana appellate court—which is the sole other case we have found involving unimproved land condemned for use as a landfill—is in accord.[16]

In reaching this conclusion, we emphasize that we reject only an attempt to value the income from a hypothetical landfill operation. Nothing in this opinion is intended to restrict proof of the enhanced value of unimproved land to a prospective private landfill operator. Despite the claims of the present defendant's expert that each site is unique and thus comparable sales are unavailable, we are confident the private market has developed an acceptable mechanism for assessing value.

## II. *Plaintiff City's Cross-appeal*

In January 1996, the court issued an order of possession effective April 1996.[17] Plaintiff City allowed the defendant to remain in possession of the land to continue farming. After harvesting a final crop of alfalfa in June 1997, the defendant surrendered the property. The defendant experienced a loss of several thousand dollars on the final crop. ■■■ The trial court awarded the full amount of interest on the judgment from the effective date of the order of possession[18] to the date of surrender, ruling the business loss

---

[15]*Ventura County Flood Control Dist.*, *supra*, 71 Cal.App.4th at pages 219-220, 222; 5 Nichols, Eminent Domain, *supra*, section 19.06[4], pages 19-48 to 19-49.

[16]*Lucre Corp. v. County of Gibson* (Ind.Ct.App. 1995) 657 N.E.2d 150, 153 (though property suitable for landfill, no abuse of discretion to exclude income method where land presently not used for that purpose).

[17]Code of Civil Procedure section 1255.410. Further undesignated section references are to the Code of Civil Procedure.

[18]Section 1268.310, subdivision (c).

barred any offset for the period in which the defendant remained in possession.[19] The parties had previously stipulated to payment of the full amount of interest from the date of surrender to the date the defendant withdrew the plaintiff's deposit of probable compensation for the land.[20]

In its cross-appeal, plaintiff City maintains that the trial court erred. We agree.

Section 1268.330 provides:

"If, after the date that interest begins to accrue, the defendant:

"(a) Continues in actual possession of the property, the value of that possession shall be offset against the interest. For the purpose of this section, the value of possession of the property shall be presumed to be the rate of interest calculated as prescribed by Section 1268.350 on the compensation awarded. This presumption is one affecting the burden of proof.

"(b) Receives rents or other income from the property attributable to the period after interest begins to accrue, the net amount of these rents and other income shall be offset against the interest."

The Legislature enacted section 1268.330 in substantially the present form in 1975 as part of the revision of statutes relating to eminent domain, pursuant to recommendations of the California Law Revision Commission. The commission noted that except for clarifications, "The provisions relating to interest on the judgment . . . are retained unchanged."[21] The prior statute had provided,

"If after the date that interest begins to accrue the defendant continues in actual possession of *or* receives rents, issues and profits from the property, the value of such possession and of such rents, issues and profits shall be offset against the interest that accrues during the period the defendant continues in actual possession or receives such rents, issues or profits."[22]

"In a condemnation action . . . the value of the property taken . . . is the subject of the action[,] and the purpose of prejudgment interest is to

---

[19]Section 1268.330.

[20]Sections 1255.010, subdivision (a), 1268.320, subdivision (a).

[21]Recommendation Proposing The Eminent Domain Law (Dec. 1974) 12 California Law Revision Commission Report (1974) pages 1623, 1862, 2091-2092.

[22]Former section 1255b, subdivision (b) (Stats. 1961, ch. 1613, § 10, p. 3450), italics added.

provide recompense for any deprivation of use of the property taken prior to the judgment. . . . Prejudgment interest recompenses the landowner for the period between the taking and the payment for the taking."[23] However, the common law has also generally recognized for more than 100 years the right of the condemner to set off rents *or* the use value of the property against the interest due, on the theory an owner is not entitled to both interest and the enjoyment of the condemned property.[24]

As noted in an early Pennsylvania Supreme Court case, there are two types of measure for an offset against interest: where a defendant occupies the condemned land, a plaintiff is entitled to offset the net rental value of the property; where a defendant maintains the beneficial ownership but is not occupying the land, the plaintiff has the right to offset the net income derived from the land.[25] The Washington Supreme Court explained that " 'The best rule is that which does not arbitrarily make possession equivalent to interest, but allows interest . . . and reduces the amount by the estimated value of the possession.' "[26] Rental value in the context of condemnation proceedings should reflect the tentative nature of occupying land subject to condemnation proceedings.[27]

To our knowledge, only one opinion in the national database denies a plaintiff the right to offset reasonable rental value from interest due. A divided Eighth Circuit Court of Appeals concluded in 1942 that the *difficulties in proof* of the reasonable rental value of condemned property should be a basis for denying an offset based on this measure; the dissent would have allowed this measure along with any actual income.[28]

Against this common law backdrop, we find California law in accord. At a time before the enactment of statutes specifically providing for interest and offset, we concluded in *City of Los Angeles v. Aitken* that, as with any other

---

[23]*Placer County Water Agency v. Hofman* (1985) 165 Cal.App.3d 890, 903 [211 Cal.Rptr. 894], italics omitted.

[24]See Annotation, Eminent Domain: Charging Landowner with Rent or Use Value of Land Where He Remains in Possession After Condemnation (1968) 20 A.L.R.3d 1164, 1166-1167.

[25]*Pennsylvania Co. for Insurances on Lives & Granting Annuities v. City of Philadelphia* (1918) 262 Pa. 439, 443 [105 A. 630, 631, 2 A.L.R. 1573].

[26]*Public Utility Dist. No. 1 of Douglas County v. Washington Water Power Co.* (1944) 20 Wash.2d 384, 387 [147 P.2d 923, 925].

[27]*State by Mondale v. Bohnen* (1966) 273 Minn. 266, 269 [140 N.W.2d 838, 841, 20 A.L.R.3d 1157]; *Falso Heating & Sheet Metal Co. v. State* (1967) 59 Misc.2d 12, 13 [297 N.Y.S.2d 693, 694-695], affirmed by memorandum opinion (1968) 31 A.D.2d 716 [297 N.Y.S.2d 524], appeal denied (1969) 23 N.Y.2d 646 [299 N.Y.S.2d 1026].

[28]*Central Nebraska Public Power and Irrigation Dist. v. Fairchild* (8th Cir. 1942) 126 F.2d 302, 306, 307; see *id.* at page 308 (dis. opn. of Johnsen, J.).

final court determination, a defendant was entitled to interest at the legal rate on the valuation of the condemned land.[29] We also agreed that in theory the plaintiff was entitled to an offset of the value to a defendant of the retained possession after the date of the order.[30] However, citing the "best rule" articulated in the Washington Supreme Court's opinion (quoted above), we concluded that a plaintiff must affirmatively prove the estimated value of the possession; as the City of Los Angeles had not presented any evidence that possession of the right to water from Mono Lake tributaries earned any rents or profits, we denied an offset.[31]

Perhaps because the right at issue did not involve realty, the case did not explicitly consider whether a plaintiff could rely on evidence of fair rental value to establish an offset. However, the effect of *Aitken* on the issue of offset is ultimately irrelevant. Former section 1255b, as originally enacted in 1959,[32] allowed interest but did not provide for *any* offset. This effected an implied abrogation of the decision.[33]

We are thus left with the language of the statute, which since 1961 has reflected the common law's alternative measures of offset for when there is actual possession of the property—the fair rental value for condemned property—and when there is mere beneficial entitlement to the actual return on the property, if any. "The value of said possession during said time is . . . dependent upon evidence as to the *money value to defendant* of the full use of [the] parcel . . . during that period . . . ."[34] There is consequently no basis for the trial court to have limited the plaintiff's offset rights to the defendant's actual return on the land (less than zero) where, as here, the defendant remained in possession of the land. This allows a defendant beneficial use of the asset, but ties a plaintiff's right to offset to the defendant's ability to make productive use of that asset.

We express no opinion on whether a plaintiff is entitled to a credit for *both* fair rental value and actual rents against interest, although a Ninth Circuit

---

[29]*City of Los Angeles v. Aitken* (1939) 32 Cal.App.2d 524, 531-532 [90 P.2d 377] (*Aitken*); see Annotation, Eminent Domain: Charging Landowner with Rent or Use Value of Land Where He Remains in Possession After Condemnation, *supra*, 20 A.L.R.3d at page 1178.

[30]*Aitken*, *supra*, 32 Cal.App.2d at page 532.

[31]*Aitken*, *supra*, 32 Cal.App.2d at pages 532, 535.

[32]See Statutes 1959, chapter 282, section 1, page 2189.

[33]*People ex rel. Dept. Public Works v. Forster* (1962) 58 Cal.2d 257, 268 [23 Cal.Rptr. 582, 373 P.2d 630] (right to offset did not exist until 1961 amendment of former § 1255b); *People ex rel. Dept. of Public Works v. Podrat* (1961) 194 Cal.App.2d 696, 701 [15 Cal.Rptr. 343] (no provision for offset under 1959 version of former § 1255b).

[34]*People ex rel. Dept. Public Works v. Giumarra Vineyards Corp.* (1966) 245 Cal.App.2d 309, 322 [53 Cal.Rptr. 902] (*Giumarra Vineyards Corp.*), italics added.

Court of Appeals decision applying California law has assumed on concession of the parties that this is proper.[35] In light of the amount of offset being limited to the total amount of interest,[36] it is difficult to imagine when such a cumulative offset would have significance.

We need not remand for redetermination of the amount of offset. Under the statute, it is presumed to be equal to the rate of interest absent evidence to the contrary, a legislative answer to the concerns of the Eighth Circuit in *Fairchild, supra,* 126 F.2d 302. As the parties did not introduce any relevant evidence to the contrary, the presumption stands. We shall thus modify the judgment to add a full offset for the period the defendant was in possession of the land.[37]

## DISPOSITION

The judgment is modified at line 9 on page 6 by striking the period and adding the following to the end of the sentence: ", such interest to be fully offset pursuant to Code of Civil Procedure section 1268.330, subdivision (a), by the equivalent value of possession during the period Brocchini occupied the land." As modified, the judgment is affirmed. Although a close question exists whether we should "otherwise order[]," under compulsion of section 1268.720 the defendant shall recover costs of appeal.[38]

Sims, Acting P. J., and Morrison, J., concurred.

---

[35]*Milens of California v. Richmond Redevelopment Agency* (9th Cir. 1982) 665 F.2d 906, 909.

[36]*Giumarra Vineyards Corp., supra,* 245 Cal.App.2d at page 322.

[37]*Sagadin v. Ripper* (1985) 175 Cal.App.3d 1141, 1170 [221 Cal.Rptr. 675]; 9 Witkin, California Procedure (4th ed. 1997) Appeal, section 749, pages 777-778.

[38]E.g., *PG&E, supra,* 189 Cal.App.3d at pages 1147-1148.