Filed 4/29/14  Sohal v. P. ex rel. Dept. of Transportation CA3

# NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Sutter)

----

| | |
|---|---|
| BALBIR SOHAL, | C073725 |
| Plaintiff and Appellant, | (Super. Ct. No. CVCS 12-1511) |
| v. | |
| THE PEOPLE ex rel. DEPARTMENT OF TRANSPORTATION,[1] | |
| Defendant and Respondent. | |

Plaintiff Balbir Sohal filed this action seeking damages for an underlying

"[c]onstitutionally flawed" eminent domain action in which defendant Caltrans violated a

---

[1] The caption of plaintiff's complaint (utilized throughout the record) incorrectly included the State of California as a separate defendant and suggested a second defendant, California's Department of Transportation (Caltrans), acted as the People's relator.  We have adopted the correct designation as shown above, which plaintiff Sohal now uses in his briefing on appeal.

1

"special duty" through its wrongful conduct that resulted in an "improper payment" to him; he also claimed entitlement to damages in inverse condemnation. Caltrans made a special motion to strike the complaint. (Code Civ. Proc., § 425.16.)[2] The trial court granted the motion and entered a judgment of dismissal. After denying Sohal's motion for a new trial, the court awarded legal fees to Caltrans.

Sohal appeals both from the judgment of dismissal and the order awarding legal fees. However, he has not presented any argument regarding the latter (asserting in a footnote that neither the right to legal fees nor the amount of the award is an issue on appeal). Accordingly we will treat the latter appeal as abandoned and dismiss it. (*In re Sade C.* (1996) 13 Cal.4th 952, 994.) As for his appeal from the judgment of dismissal, Sohal contends in essence that the acts he alleged as "wrongful conduct" are analogous to either legal malpractice or a breach of fiduciary duty, which are not proper subjects on which to premise a special motion to strike. He also argues the evidence produced in support of the special motion to strike (which he did not counter with any opposing evidence) demonstrates a probability of prevailing at trial in establishing a breach of duty and inverse condemnation. We do not find any of his arguments persuasive and shall affirm the judgment of dismissal.

## FACTUAL AND PROCEDURAL BACKGROUND

We begin with the litigation that is the prelude to the present case.[3]

### 2007 Litigation (*Super. Ct. Sutter County, No. CVCS 07-1309*)

In order to make improvements to Highway 99, Caltrans initiated condemnation proceedings in 2007 against a 70-acre prune orchard that Sohal leased from the Darrell

---

[2] Undesignated statutory references are to the Code of Civil Procedure.

[3] We grant Caltrans's motion to take judicial notice of matters in the prior case of which the trial court took judicial notice and which are part of the record on appeal.

2

and Jane Smith Family Partnership (the Partnership).  Sohal had invested substantial capital in the process of converting the land from rice fields to orchards in 1992, and as a result obtained extremely favorable terms in his 25-year lease.  After Caltrans took possession in February 2008, there were 10 additional crop years remaining on the lease, to which the property would have remained subject in the event the Partnership sold the land.  The right to condemn the property was not disputed; the parties proceeded to trial solely on valuation.

The only expert to testify at trial was the Partnership's witness.  He based his valuation of Sohal's interest exclusively on the favorable differential between the lease terms and the market rate for the remainder of the lease (so-called "bonus rent"), which he calculated at $93,000.  (He valued the property as a whole at $700,000.)  Although two exhibits had calculated the present value of Sohal's interest in his *business* over the next 10 years at $1.2 million (rounded), the expert testified this was not attributable to Sohal's interest in the condemned *property* and thus did not affect his opinion of its value.

In presenting his case, Sohal accepted the expert's valuation of his interest in his lease.  He sought additional compensation for his lost cash flow, based on the exhibits.  Caltrans and the Partnership moved for a directed verdict based on the expert's valuation.  Sohal also moved for a directed verdict based on the cash flow exhibits.  The trial court granted a directed verdict to Caltrans and the Partnership and denied Sohal's motion, ruling that the expert had not endorsed the exhibits' methodology and therefore the exhibits could not be a proper basis for judgment because the finder of fact in an eminent domain action can rely only on expert (or an owner's) opinion of value and cannot itself make a determination from the underlying evidence.  The trial court thus entered judgment in 2009 for $700,000, of which Sohal's share was $93,000.

On appeal, we affirmed the judgment in a nonpublished opinion. (*People ex. rel. Department of Transportation v. Sohal et al.* (Jan. 7, 2011, C063301).) We noted the just compensation for a lessee had been limited traditionally to the outstanding bonus value of the leasehold, and thus the directed verdict on this issue was correct because the evidence was undisputed. We rejected Sohal's argument that he was entitled to additional compensation for his lost profits from future harvests. We noted that nothing constitutionally requires compensation for loss of goodwill,[4] so any right was purely statutory. We concluded he failed to establish any of the necessary elements for lost goodwill; his reliance on the cash flow exhibits without any expert testimony endorsing them was insufficient. He failed to establish any authority on appeal to support his claim that lost profits are otherwise a component of the constitutionally mandated just compensation. The California Supreme Court denied review on March 16, 2011, S190396. The United States Supreme Court denied a petition for a writ of certiorari in October 2011 (*sub nom. Sohal v. Darrell & Jane Smith Family Partnership et al.* (2011) ___ U.S. ___ [181 L.Ed.2d 258]).

### *2012 Litigation (Super. Ct. Sutter County, No. CVCS 12-1511)*

Sohal initiated the present action in July 2012. As with a motion for summary judgment, the allegations of the pleading frame the issues in a special motion to strike. (*Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, 654.) Shorn of conclusory *legal* allegations, the complaint asserts some of the preceding underlying circumstances and the following facts.

---

[4] "Courts have long accepted that goodwill may be measured by the capitalized value of the net income or profits of a business or by some similar method of calculating the present value of anticipated profits." (*People ex rel. Dept. of Transportation v. Muller* (1984) 36 Cal.3d 263, 271.)

In the prior trial, it was uncontroverted that Sohal was unable to relocate, because Caltrans failed to present any evidence of another available leasehold or his financial ability to finance a relocation. Caltrans, aware that bonus rent was (in Sohal's opinion) an improper measure of just and equitable compensation as a result of this circumstance, nonetheless pursued this litigation theory in the trial court and on appeal. Caltrans thus failed to "own up to the particular procedural and substantive facts underpinning Sohal's property right" and instead relied on inapposite authority in support of its motion for a directed verdict. Caltrans also incorrectly asserted in the litigation that the statutory right to goodwill applied to Sohal; in his opinion, it is inapposite because he would have the same single buyer regardless of his location and thus would not have diminished "patronage." This deceptive conduct contrasted with Sohal's own forthright conduct, in which he called attention to a $50,000 mistake in his favor. As a result of the conduct of Caltrans, there was "an improper payment to the plaintiff."

In his government claims form appended to the complaint (which sought damages in the amount of the cash flow exhibits), Sohal specified the following actions as wrongful conduct. Caltrans made a challenge to the sufficiency of his expert disclosure in a "studied and crafted manner" on technical grounds, and also challenged his proposed testimony "as to . . . his . . . just and due compensation." Caltrans was aware of his inability to relocate and yet adhered to the theory of bonus rent, whereas the proper standard required that he "be viewed as having occupied the property absent condemnation and [entitled to] that which would have then flowed to him" as his damages. Caltrans presented improper types of comparable property at trial. Although his evaluation of his just compensation was in fact in evidence, Caltrans did not correct the trial court (in connection with its motion for directed verdict) when the court stated that Sohal had not presented any evidence or testimony on the point. Caltrans also disregarded the uncontradicted evidence of his inability to relocate, which refuted the

5

basis for the motion.  Refusing to change its incorrect theories of the case, Caltrans "allowed an incorrect position to be put forward" in this court and did not confess its error[5] in any responses to his petitions for rehearing, review, and certiorari.

Caltrans demurred to the complaint.  The trial court overruled the demurrer (the actual order is not part of the record on appeal).  Caltrans answered and made its special motion to strike.

In addition to the judicially noticed files of the prior litigation, the motion included declarations from the attorneys who represented Caltrans in the prior litigation.  These made the self-evident point that all of the actions specified in the complaint occurred in the course of a judicial proceeding, in connection with issues under the courts' review, to achieve the object of the Caltrans litigation.  They also identified their objections to the cash flow exhibits (or any testimony from Sohal based on them) as being premised on the general inadmissibility of evidence of future business profits in an eminent domain proceeding as speculative.  (E.g., *City of Stockton v. Albert Brocchini Farms, Inc.* (2001) 92 Cal.App.4th 193, 198-199 ["Generally, a defendant may not present evidence of income from a business that is *conducted on* the condemned property"].)

Sohal's opposition did not include any material exhibits.  He explicitly conceded that the conduct identified in the complaint was protected activity ("No argument about that") before proceeding to assert that this conduct was nonetheless akin to legal malpractice or malicious prosecution, both of which he asserted are not subject to special motions to strike (an incorrect assertion, as we later note, with respect to the latter).

---

**5** This commences Sohal's repeated evocations of the principle that an attorney is liable for *damages* in an action for malicious prosecution for continuing to litigate an action after discovering that it lacks probable cause (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 970 (*Zamos*)), which he transmutes without explanation into a "duty" to adversaries to "adjust and recalibrate their legal and factual positions."

The trial court found Caltrans had established that its actions were protected activity under the statute. The court also found that Sohal had not carried his burden of producing any admissible evidence establishing a prima facie case in support of his complaint. It therefore granted Caltrans's special motion to strike.

## DISCUSSION

### I. Standards of Review

In section 425.16, the Legislature created a process for piercing the pleadings at an early stage of litigation (unlike a demurrer or an ordinary motion to strike) if the defendant is able to demonstrate that its underlying conduct comes within one of the categories of constitutional rights that the statute seeks to protect. (*Simmons v. Allstate Ins. Co.* (2001) 92 Cal.App.4th 1068, 1073.) This requires us to determine if the alleged acts underlying a cause of action "arise from" activity protected under section 425.16 (*Vargas v. City of Salinas* (2009) 46 Cal.4th 1, 14, 16, 20) and thus warrant the expedited and summary evaluation of the merits of the action at the pleading stage (*Graffiti Protective Coatings, Inc. v. City of Pico Rivera* (2010) 181 Cal.App.4th 1207, 1211). Protected activity (which Sohal persists in describing as "permitted" activity) is an act in furtherance of the rights to free speech and petition with respect to a public issue. (§ 425.16, subds. (b)(1) & (e).) The focus is not the *substance* of a count but whether it is *premised on* a protected act, rather than the act being only either a catalyst for the litigation or evidence of liability. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 92; *USA Waste of California, Inc. v. City of Irwindale* (2010) 184 Cal.App.4th 53, 62; *Pico Rivera*, *supra*, 181 Cal.App.4th at p. 1215 [even though challenged speech assists in telling the evidentiary story, claims are based on city's duties under law to conduct competitive bidding].)

If a defendant satisfies this burden, the plaintiff *must* produce *evidence* sufficient to establish a prima facie case of prevailing on the complaint. (*Jarrow Formulas, Inc v.*

7

*LaMarche* (2003) 31 Cal.4th 728, 741 (*Jarrow Formulas*); *Roberts v. Los Angeles County Bar Assn.* (2003) 105 Cal.App.4th 604, 613-614.) A plaintiff also bears the burden of proof at this stage, which is akin to an opposition to motions for nonsuit, directed verdict, or summary judgment. (*Gilbert v. Sykes* (2007) 147 Cal.App.4th 13, 26.) As with opposition to a summary judgment motion, a plaintiff may not rely on the allegations of the complaint to oppose a special motion to strike, and instead must produce competent admissible evidence. (*Schoendorf v. U.D. Registry, Inc.* (2002) 97 Cal.App.4th 227, 236.) A defendant, however, has the burden of proof to establish an affirmative defense to the action. (*Seltzer v. Barnes* (2010) 182 Cal.App.4th 953, 969 (*Seltzer*).) We review a special motion to strike de novo. (*Paul for Council v. Hanyecz* (2001) 85 Cal.App.4th 1356, 1364.)

## II. Protected Conduct Is at Issue

We will not belabor our analysis of the first step. The acts on which Sohal premises his putative causes of action are quintessential examples of protected petitioning activity. (See *Kearney v. Foley & Lardner, LLP* (9th Cir. 2009) 566 F.3d 826, 837 [condemnation action is petitioning activity on behalf of citizens to establish public use].) His attempted analogy to the exclusion from the statute of otherwise protected petitioning activities that result in malpractice falls flat. (Cf. *Kolar v. Donahue, McIntosh & Hammerton* (2006) 145 Cal.App.4th 1532, 1540.) His is a *third party* claim against an opponent's attorney for litigation activities, which makes the principle in *Kolar*—premised on an attorney's duty to represent a client competently—utterly inapposite. (*Seltzer*, *supra*, 182 Cal.App.4th at p. 968; see *Kolar*, at p. 1540.) The same is true of his invocation of *Castleman v. Sagaser* (2013) 216 Cal.App.4th 481 as being "[s]omewhat analogous." It is not at all analogous, because it is premised on an attorney's fiduciary duty of loyalty to a *client* (*id*. at p. 493), which does not exist as to an adversary. Although Sohal extracts from *City of Los Angeles v. Decker* (1977) 18 Cal.3d 860, 871,

8

what he calls the "quasi-judicial obligation" on the part of government attorneys to their adversaries to ensure the rendering of impartial justice,[6] the case never suggests a breach of this duty is *independently actionable* in tort; it simply *reversed the judgment* on the basis of affirmative misconduct on the part of the condemnor's attorneys in misleading the jury with false argument.  (*City of Los Angeles v. Decker, supra,* 18 Cal.3d at p. 871.)  He similarly fails to provide any authority for premising an independent action either on the professional obligation to deal truthfully with adversaries and the courts (Bus. & Prof. Code, § 6068, subd. (d)), or the right to damages for continued malicious prosecution under *Zamos, supra,* 32 Cal.4th 958.  Finally, while the gist of Sohal's complaint is indeed "somewhat" akin to an action for malicious prosecution (albeit with the significant distinction that Caltrans *prevailed* rather than *failed* in its litigation against him), it is a pointless analogy to urge because conduct resulting in malicious prosecution *is* subject to a special motion to strike.  (*Jarrow Formulas*, *supra*, 31 Cal.4th at p. 732.)

### III.  No Probability of Prevailing at Trial

His complaint thus being properly subject to a special motion to strike, Sohal had to establish a prima facie case in support of its allegations based on *evidence*.  The only *evidence* submitted with the motion were the Caltrans declarations, which Sohal essentially adopted as his own.  These declarations established that all the acts included in the exhibit to the complaint were the litigation activities of the Caltrans attorneys in the course of a judicial proceeding, which were related to the proceeding and authorized under the law to achieve the object of the proceeding.  This established conclusively that the elements of the absolute litigation privilege of Civil Code section 47 applied to the conduct.  (*Sylmar Air Conditioning v. Pueblo Contracting Services, Inc.* (2004)

---

[6] *County of Santa Clara v. Superior Court* (2010) 50 Cal.4th 35, 49 described the case (and others) as representing the principle in the context of a "class of civil cases in which counsel representing the government must be absolutely neutral."

9

122 Cal.App.4th 1049, 1058.) Absent some species of extrinsic fraud, it was *plaintiff Sohal's* burden in the course of the underlying litigation to expose any bias, misrepresentation, or falsity on the part of Caltrans, and thus even fraudulent conduct on the part of opposing counsel is not actionable. (*Ibid.*; *Seltzer*, *supra*, 182 Cal.App.4th at p. 970; *Home Ins. Co. v. Zurich Ins. Co.* (2002) 96 Cal.App.4th 17, 28 (*Home Ins. Co.*) [fraudulent misrepresentation of policy limits, which induced lower settlement, protected under litigation privilege].) Sohal did not produce any evidence of extrajudicial acts on the part of Caltrans that unknown to him prevented him from prevailing (such as spoliation of evidence, which is not subject to the litigation privilege—Civ. Code, § 47, subd. (b)(2)). As a result, even if he *could* premise some cause of action in tort on the alleged conduct (a dubious concept that we do not need to explore further), the conduct is absolutely privileged and he does not have any possibility of prevailing at trial.

As for Sohal's cause of action for inverse condemnation,[7] his argument appears to suggest the acts of the Caltrans attorneys in the underlying action erroneously depressed the amount of the damages he recovered. However, Sohal has already had his day in court on the issue of his entitlement to just damages for the premature termination of his lease. That he claims to have been wrongly prevented from litigating his present *theory* of compensation does not entitle him to disregard the basic precept that an issue actually litigated, which is the subject of a final judgment, is binding in a subsequent proceeding against the same party. "Our judicial system is intended for the resolution of disputes, rather than their perpetuation through the ages." (*Weikel v. TCW Realty Fund II Holding Co.* (1997) 55 Cal.App.4th 1234, 1251.) Without finality of judgments, there would be

---

[7] See *City of Monterey v. Del Monte Dunes at Monterey, Ltd.* (1999) 526 U.S. 687, 745-748 [143 L.Ed.2d 882, 928-930] (conc. opn. of Souter, J.—discussing doubtful aptness of treating inverse condemnation as a species of tort); cf. *Holtz v. Superior Court* (1970) 3 Cal.3d 296, 303 (basis for inverse condemnation damages not coextensive with tort law).

10

no stability in transactions, and thus the doctrine of res judicata "is the service rendered by the courts" to society in furtherance of this interest. (Rest.2d Judgments (1982) Introduction, p. 11.) While the principle is difficult for lay people (and some attorneys) to appreciate, the importance *to society* of finality will generally transcend an individual's perception of an unjust result from an arguably incorrect application of the law; an erroneous judgment is thus entitled to the same effect as any other. (*People v. Cotton Belt. Ins. Co.* (1983) 143 Cal.App.3d 805, 808.)

In modern terminology, res judicata has two aspects after a final judgment. Claim preclusion prohibits subsequent litigation between the same parties on the same "cause of action." Issue preclusion operates as an estoppel against a losing party for issues actually litigated and resolved in the prior final judgment. (*Knickerbocker v. City of Stockton* (1988) 199 Cal.App.3d 235, 242; Rest.2d Judgments, *supra*, pp. 1, 4.) Even if we entertain the unwarranted assumption that a different "primary right" is at issue in the present litigation—making claim preclusion inapplicable (*Pitts v. City of Sacramento* (2006) 138 Cal.App.4th 853, 857)—the value of the lease was an issue actually litigated between the same parties and is now the subject of a final judgment.

The only basis for avoiding issue preclusion would be allegations sufficient to establish extrinsic fraud as a basis for disregarding the prior judgment. (*In re Marriage of Melton* (1994) 28 Cal.App.4th 931, 937.) The "essence" of extrinsic fraud is one litigant's prevention of the other from properly litigating the case, either by keeping the opponent in ignorance "or in some other manner" concealing a right from the opponent. (*Ibid.*; see 8 Witkin, Cal. Procedure (5th ed. 2008) Attack on Judgment in Trial Court, § 225, p. 832.) This does not include suppressing material evidence, perjury, or even presenting false documents; where litigants have an opportunity to protect their interests, any misrepresentation on the part of an opponent is considered "intrinsic" and not a basis for relief from the prior judgment. (*Home Ins. Co.*, *supra*, 96 Cal.App.4th at p. 27.)

11

Nothing prevented Sohal in the underlying case from making the same challenges to the conduct of that litigation that he raises here.  As a result, even if the litigation privilege does not otherwise absolutely protect the Caltrans conduct at issue from liability, Sohal is precluded from relitigating the issue of his compensation damages in the present action in the guise of inverse condemnation.

## DISPOSITION

The judgment of dismissal is affirmed.  The appeal from the order awarding legal fees is dismissed.  Caltrans shall recover its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)


      BUTZ      , Acting P. J.


We concur:


      MAURO      , J.


      HOCH      , J.