Filed 8/27/24  P. v. Rivera CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JORGE RIVERA, JR.,<br><br>Defendant and Appellant. | F086028<br><br>(Super. Ct. No. VCF385603)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tulare County.  Nathan G. Leedy, Judge.

Jeffrey S. Kross, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Sally Espinoza, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

In 2023, a jury convicted appellant Jorge Rivera, Jr. of first degree murder (Pen. Code, § 187, subd. (a);[1] count 1). The jury found true firearm enhancement allegations, including that appellant had personally and intentionally discharged a firearm causing death (§ 12022.53, subds. (b), (c) & (d)). The jury also convicted appellant of possessing a firearm as a convicted felon (§ 29800, subd. (a); count 2) and possessing an assault weapon (§ 30605, subd. (a); count 3).

For the first degree murder, appellant was sentenced to prison for 25 years to life, with a consecutive 25 years to life for the firearm enhancement. The court imposed middle terms of two years, respectively, for the convictions in counts 2 and 3, which were ordered to run concurrently to the sentence in count 1.

Before trial, a contested hearing occurred regarding appellant's competency. The trial court found competency and criminal proceedings were reinstated. Appellant's primary claim on appeal is that the trial court erred in finding him competent. We disagree and reject that claim. However, we agree with the parties that a clerical mistake appears in the determinate abstract of judgment, which we will direct the trial court to correct. We otherwise affirm.

## BACKGROUND

Appellant does not challenge the validity of his conviction for first degree murder. We briefly summarize the material facts.

## I.     The Murder.

Before this murder, appellant worked at a dairy for a little over one year. He filed approximately three workers' compensation claims while employed there before he voluntarily quit. The parties agree that appellant's relationship with the dairy was "contentious."

---

[1]     All future statutory references are to the Penal Code unless otherwise noted.

On September 3, 2019, appellant confronted the dairy's owner, Anthony Dragt, Sr. Appellant was armed with a loaded firearm. Dragt ran from appellant, who chased him. Appellant was seen firing at Dragt, who fell to the ground. Appellant went to his vehicle parked nearby, but he then went back to where Dragt was lying on the ground and appellant fired additional shots at him. Appellant fled in his vehicle.

Later that same night, law enforcement conducted a traffic stop and they arrested appellant. Multiple firearms were recovered from appellant's vehicle. Testing confirmed that appellant's firearms had been used to kill Dragt. When arrested, appellant had gunshot residue on his hands, on his shirt, and on his belt.

Appellant shot Dragt seven times. The fatal shot was delivered to Dragt's head, but other shots to the torso were potentially fatal.

## II.     The Expert's Report Regarding Appellant's Competency.

Appellant was arraigned in this matter in September 2019. His legal counsel declared a doubt regarding appellant's competency to stand trial. The court suspended criminal proceedings and it appointed a psychologist to evaluate appellant.

In October 2019, the appointed psychologist, Stacy McLain, filed a report opining that appellant was not competent to stand trial. Appellant had expressed to McLain that he suffers from auditory hallucinations, but he was unsure when he first experienced this. He claimed he hears " 'different voices' and they often tell him to hurt himself." He also reported a history of visual hallucinations that occur " 'off and on.' " Appellant reported to McLain that he first participated in mental health services in high school, and he was assigned a therapist. He was unsure when he was first prescribed psychiatric medications.

According to McLain's report, appellant's auditory hallucinations were the most distressing symptom because appellant reported that they made him frustrated and angry, and he " 'can't control it.' " Appellant reported that the auditory hallucinations disrupted

3.

his sleep and his concentration. He described being distracted by them during his court appearance in this matter.

## III. The Evidence at the Competency Hearing.

In February 2020, the trial court conducted a contested competency hearing. We summarize the material evidence.

### A. McLain's testimony.

McLain has a doctorate degree in psychology. The court recognized her as an expert.

McLain had met with appellant for about one hour. According to McLain, appellant had "genuine complaints" of " 'psychotic symptoms' " which were "interfering with his ability to attend to what was going on in court and assist his attorney in his own defense." However, McLain opined that appellant understood the nature and purpose of the trial proceedings. According to McLain, appellant had organized and coherent thoughts. Appellant was able to explain the differences between attorneys, the judge and the jury. McLain believed that appellant had been able to have an organized conversation with her.

McLain was aware that appellant had spent time in prison before, and she believed he understood the criminal process. He was able to explain to her the meaning of the charges. However, McLain was concerned that appellant did not understand the seriousness of his current charges and appellant believed the charges "would somehow go away."

McLain found that appellant suffered from an " 'unspecified psychosis.' " She could not provide a more precise diagnosis because she did not have the required evidence of symptoms over a six-month period. She noted to the court that she was unable to review any medical records. McLain agreed in court that her main concern involved appellant's self-described hallucinations. She was also concerned about

appellant " 'responding to internal stimuli.' " She believed that appellant's "internal stimuli" affected his conversation with her, but she noted she had been able to compensate for that as a trained psychologist when speaking with appellant, who was "generally on topic and engaged."

Appellant reported to McLain that he was prescribed Zyprexa, which is an antipsychotic. At the time of their meeting, appellant had been taking Zyprexa for one or two weeks.

McLain opined that appellant's psychotic symptoms had impacted his experience in the courtroom. Appellant had indicated to her that his psychotic features were insufficiently controlled with his medication at that time. McLain opined that, if appellant's medications were adjusted, those symptoms interfering with his ability to participate in his defense would improve.

McLain did not believe appellant was malingering. She believed appellant was benefiting from Zyprexa and she opined that an increase in its dosage would likely resolve appellant's remaining barriers to competency. She had encouraged appellant to discuss the dosage issue with his medical provider, and he had agreed to do so.

### B. The defense's other witness.

In addition to McLain, the defense called to testify one of appellant's former work colleagues. The colleague had worked with appellant at the dairy for a couple of weeks. According to the colleague, appellant was "not right in the head." The colleague had seen appellant "talking to himself sometimes."

### C. The prosecution's evidence.

The prosecutor did not elicit any expert testimony to rebut McLain's opinion that appellant was not competent to stand trial. Instead, the prosecutor called lay witnesses who had observed appellant on a daily basis.

### 1.    *Dragt's son.*

Dragt's adult son testified that appellant had worked at the dairy for about eight months.  Appellant had no work-related issues.  The son never saw appellant talking to himself, and there were no concerns that appellant was ever hearing voices.  While working at the dairy, appellant had filed workers' compensation claims.

### 2.    *The correctional deputies.*

The prosecutor called four correctional deputies to testify.  The deputies had all spent time interacting with appellant while he was in jail custody in this matter.

Three of the officers saw appellant about every 30 minutes during their respective shifts.  They would see him about 24 times during a typical 12-hour shift.  None of the officers ever saw appellant act strangely.  Appellant never acted like he was having auditory or visual hallucinations.  All three officers testified that they had previously encountered inmates who suffered from hallucinations, but appellant did not exhibit such behavior.  None of the officers ever felt the need to refer appellant for a psychological evaluation.

The fourth deputy had contact with appellant on September 3, 2019.  She went over a mental health questionnaire with appellant.  Appellant was very friendly and talkative with this deputy, and he seemed to understand the questions.  Appellant answered everything appropriately.  During this interview, appellant denied having any mental health issues.  He denied having any depression or being bipolar.  He denied taking any medication.  The deputy talked with appellant for about 90 to 100 minutes.  During that time, appellant never appeared to be suffering visual or auditory hallucinations.

### 3. *The recorded jail calls.*

The prosecutor introduced into evidence two recorded jail calls, which occurred on October 26 and 27, 2019. In those calls, appellant spoke with various members of his family. At no time did appellant appear confused.

In one call, appellant encouraged his younger sister to keep up her grades to get into college, and to get a scholarship. Appellant encouraged her to get into clubs and sports to build up her resume for college. Later in that same call, appellant discussed with his mother her refinancing of her vehicle loan. Appellant suggested that she should get a multi-car discount through her insurance company.

In the other call, appellant discussed the remaining balance ($1.62) on his account in jail. He stated that, because his account was so low, he had received two free stamps. During this call, appellant directed family members to not put money on his books that night so he could get two more free stamps. Appellant also said he wanted to use a P.O. Box to write letters because he did not want people to know his street address.

## IV. The Court's Competency Ruling.

After hearing the evidence and the arguments from counsel, the court orally issued its ruling. The court stated its belief that McLain had been a good witness, and the court noted that McLain's "major concern" was appellant's hallucinations. The court also noted that McLain believed appellant's hallucinations could probably be controlled by an increase in dose of Zyprexa.

Although the court generally liked McLain as a witness, it nevertheless stated that her ultimate opinion "was very limited." The court noted that McLain did not have all of the information, such as a mental health history. According to the court, it did not appear that a mental health history existed for appellant, which the court found significant.

The court noted that McLain's diagnosis of incompetency was based almost exclusively on appellant's self-reported statements and actions. The court ruled that, in

light of the prosecution's evidence, the defense had not overcome the presumption that appellant was competent to stand trial. The court reinstated criminal proceedings.

## V. The Additional Competency Concerns Raised Below.

The trial court found appellant competent to stand trial in February 2020. In November that year, appellant's trial counsel filed a memorandum declaring a renewed intent to raise doubt regarding appellant's competency to stand trial. The People filed an opposition to appellant's request to suspend criminal proceedings.

On November 30, 2020, the court denied without prejudice appellant's request to suspend criminal proceedings. The court found that appellant had not presented any evidence of changed circumstances supporting his motion.

On October 21, 2022, the trial court reconsidered appellant's competency after his defense counsel again raised that issue. The court again found no substantial change in circumstances to justify suspending the criminal action. That same day, appellant entered an additional plea of not guilty by reason of insanity (NGI), to go along with his previous not guilty plea. The court appointed doctors for a sanity evaluation.

On January 27, 2023, appellant withdrew his NGI plea and he proceeded to trial solely on his plea of not guilty.

## DISCUSSION

## I. Substantial Evidence Supports the Trial Court's Ruling.

Appellant argues the trial court erred in finding him competent to stand trial and reinstating the criminal proceedings. According to appellant, McLain's expert opinion— which went unrefuted by another expert—was sufficient for the court to find him incompetent. Appellant asks us to remand this matter for further proceedings.

We reject appellant's arguments. Substantial evidence supports the ruling that appellant was competent to stand trial. The trial court did not err in declining to follow McLain's opinion.

8.

Both California law and the federal due process clause prohibit the state from trying a defendant who is mentally incompetent. (§ 1367; *Pate v. Robinson* (1966) 383 U.S. 375, 378.) However, a criminal defendant is presumed competent to stand trial. (*People v. Blacksher* (2011) 52 Cal.4th 769, 797.) The defendant bears the burden by a preponderance of the evidence to establish his or her own incompetency. (*Ibid.*)

Under California law, a defendant is mentally incompetent "if, as a result of a mental health disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner." (§ 1367, subd. (a).) When a question is raised regarding competency, section 1368 requires the defendant to receive "a hearing" to resolve that issue. (§ 1368, subd. (b).) "The court shall appoint a psychiatrist or licensed psychologist, and any other expert the court may deem appropriate, to examine the defendant." (§ 1369, subd. (a)(1).)

On appeal, a reviewing court determines whether substantial evidence, viewed in the light most favorable to the verdict, supports the trial court's finding that a defendant was competent to stand trial. (*People v. Lawley* (2002) 27 Cal.4th 102, 131.) "Evidence is substantial if it is reasonable, credible and of solid value." (*People v. Marshall* (1997) 15 Cal.4th 1, 31.)

We agree with respondent that substantial evidence supports the trial court's ruling that appellant was competent to stand trial. In general, much of what appellant reported to McLain showed his competency. He understood the judicial process and the roles of the participants. He understood the nature of the charges and that he faced incarceration. He generally had organized and coherent thoughts.

Dragt's son testified that, when appellant worked at the diary, the employer never had any issues with him. However, there was a conflict in the evidence regarding whether appellant was seen speaking to himself while working at the dairy. Dragt's son

denied seeing such behavior while appellant's work colleague reported such behavior. It is apparent that the trial court resolved that issue against the defense, and we will not second-guess how the court viewed such evidence. (See *People v. Mendoza* (2016) 62 Cal.4th 856, 883 [it is not the appellate court's role to reweigh evidence].)

Four correctional deputies spent time with appellant. Three of the deputies saw appellant about 24 times a day, or about every 30 minutes during a 12-hour shift. None of the deputies ever saw appellant acting strangely, hallucinating, or talking to himself. Appellant had no trouble communicating with the deputies. He was able to follow directions and he was never a disciplinary problem. No deputy ever felt the need to refer appellant for a psychological evaluation. These three deputies had previously encountered inmates who were hallucinating or talking to themselves. None of the deputies ever saw similar concerns with appellant.

The fourth deputy spoke with appellant on September 3, 2019. They spoke for at least 90 minutes as they went over a mental health questionnaire. Appellant answered questions appropriately and he denied any mental health problems. During their lengthy conversation, appellant never appeared to be suffering from hallucinations or hearing voices.

The court heard two recorded jail calls in which appellant interacted with various family members. At no time did appellant seem confused or that he was hearing voices. During one call, appellant gave advice to his younger sister to keep up her grades to get into college. He encouraged her to get into clubs and sports to build up her resume for college. At no time during the two recorded calls did appellant complain of any mental health issues. Based on a representation of facts from the recorded jail call, McLain noted during her testimony that appellant's advice to his sister about engaging in activities that would aid her ability to obtain an academic scholarship could show "higher order thinking."

We reject appellant's assertion that the trial court was obligated to adopt McLain's expert conclusion that appellant was incompetent to stand trial. The court was free to decide for itself what weight, if any, should be given to McLain's opinions. (*People v. Lawley*, *supra*, 27 Cal.4th at p. 132; *People v. Jones* (1990) 51 Cal.3d 294, 314 [it is the exclusive province of the finder of fact to determine witness credibility and the truth or falsity of the facts]; *Ventura County Flood Control Dist. v. Security First Nat. Bank* (1971) 15 Cal.App.3d 996, 1003 ["the trier of fact is exclusive judge of the weight to be given to expert testimony"].)

The court stated it believed McLain had been a good witness. However, the court was concerned that McLain had based her conclusion largely on appellant's self-reported symptoms. The court observed that McLain "did not have all the information. She had no mental health history. And there does not appear to be any, which is significant to the Court." The court concluded that McLain's opinion "was limited." The court ruled that, given the evidence presented by the prosecution, appellant had failed to overcome the presumption of competency.

This record supports the trial court's concerns regarding the limited information supporting McLain's opinion. McLain admitted in court that she did not have all of the information. Indeed, during cross-examination, McLain admitted that she was unaware about the jail recordings in this case, which she had not reviewed. She was also unaware of the police reports. She did not have access to appellant's mental health records from the jail. McLain was not aware that appellant had previously filed the workers' compensation claims against the dairy.

The court considered McLain's testimony and it weighed the circumstances surrounding her expert conclusions. The court correctly observed that no medical records supported appellant's self-serving claims. The court heard from four prosecution witnesses who had interacted with appellant on a daily basis. From the People's

11.

evidence, the court was free to conclude that appellant had not exhibited auditory or visual hallucinations. As such, the court had ample grounds to make credibility findings adverse to the defense, and we will neither reweigh the evidence nor reevaluate witness credibility on appeal. (See *People v. Jones*, *supra*, 51 Cal.3d at p. 314 [it is the finder of fact who judges witness credibility and the truth or falsity of the facts].) Because McLain based her expert opinion largely on appellant's self-reported hallucinations, the court was justified in declining to adopt McLain's ultimate opinion. The court acted well within its discretionary authority regarding how to evaluate the evidence.

Based on this record, appellant failed to meet his burden of proof to overcome the presumption he was competent to stand trial. The trial court had ample evidence from which it could reject McLain's expert conclusion, and substantial evidence supports the court's ruling. This evidence was reasonable, credible and of solid value. Consequently, the trial court did not err and the present claim fails.

**II.     We Direct the Trial Court to Amend the Determinate Abstract of Judgment.**

The parties agree, as do we, that the determinate abstract of judgment has a clerical error. In counts 2 and 3, the trial court imposed middle terms of two years, respectively, which were ordered to run concurrently to the indeterminate sentence imposed in count 1. The determinate abstract of judgment only reflects that count 3 runs concurrently.

When a discrepancy exists between a trial court's oral pronouncement of judgment and the abstract of judgment, the oral pronouncement controls. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.) An appellate court may order correction of a clerical error regarding the judgment. (*Ibid*.)

We direct the trial court to amend the determinate abstract of judgment to reflect that the sentences in count 2 and count 3 are both concurrent to the sentence imposed in count 1.

## **DISPOSITION**

The trial court is directed to have the determinate abstract of judgment amended to reflect that the sentences in counts 2 and 3 are concurrent to the sentence imposed in count 1. The court shall forward an amended abstract to the appropriate authorities. The judgment is otherwise affirmed.

LEVY, J.

WE CONCUR:


HILL, P. J.


POOCHIGIAN, J.

13.